Ramesh SOLOMON, Petitioner-Appellant,

v.

Robert I. ELSEA, Warden, Respondent-Appellee.

No. 80–2740.

United States Court of Appeals, Seventh Circuit.

Submitted on Record and Brief March 24, 1982.*

Decided April 22, 1982.

Rehearing Denied June 1, 1982.

"Statement as to Need for Oral Argument." Having considered the appellant's "Statement as to Need for Oral Argument," the Court has concluded oral argument is not necessary. The case is submitted for decision without oral argument.

Robert C. Evenstad, Sandstone, Minn., for petitioner-appellant.

Frank Tuerkheimer, Madison, Wis., for respondent-appellee.

Before CUMMINGS, Chief Judge, and SPRECHER and CUDAHY, Circuit Judges.

PER CURIAM.

Ramesh Solomon appeals from a final judgment of the district court who denied his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (1976). Solomon had been denied parole by the United States Parole Commission (Commission) despite the fact that the guidelines used by the Commission supposedly indicated that Solomon was eligible for release from prison. See 28 C.F.R. § 2.20 (1979). Solomon claims that the Commission improperly considered the magnitude of his offense in reaching its determination to imprison Solomon for a period longer than that recommended by federal regulations. He also alleges that the statement of reasons for going beyond the federal guidelines in his case was insufficient. Finally, Solomon claims that the Commission relied on erroneous information, while ignoring existing positive information, in making his parole determination. Because we conclude Solomon was not improperly denied parole, we affirm.

I.

Appellant entered a plea of guilty in August of 1977 to two counts of possession of hashish with intent to distribute, in violation of 21 U.S.C. § 841, and to one count of causing $65,000 to be transported through customs without declaration, in violation of 31 U.S.C. §§ 1059 ·and 1101. The drug-re-

lated counts involved 1,296 pounds of hashish, imported from India, with an estimated street-value of $1,425,600. The appellant's brother, Ashok Solomon, pleaded guilty to identical charges. On the drug-related counts, the appellant was sentenced to prison terms of five and three years, to be served consecutively. This prison sentence was coupled with a $30,000 committed fine.[1] An additional $500,000 committed fine was imposed on the currency count. The sentencing court later changed the nature of the fines from committed to noncommitted.

Ramesh Solomon and his brother Ashok received their initial parole hearing on July 2, 1979. The hearing examiner panel referred the Solomons' parole determinations to the National Commissioners as an "original jurisdiction" matter, recommending that the brothers be continued to the expiration of their sentences. On November 5, 1979, the appellant was informed that his request for parole had been denied. Ashok Solomon received a similar determination.

These determinations constituted final decisions of the Parole Commission. *See* 28 C.F.R. § 2.27(d). The Solomons then sought judicial review of their parole determinations in district court. In a joint order, the district court denied their petitions for writs of habeas corpus. Ramesh Solomon appeals his adverse parole determination to this Court.

## II.

The first issue which we must address is whether the statement of reasons given to Solomon by the Commission is sufficient to constitute proper notice of the grounds justifying his parole denial. Solomon argues that the alleged insufficiency of notice amounted to a denial of due process. However, in order to apply the Due Process Clause to a parole determination, we must first determine whether the federal statute governing parole release determinations creates a protectible liberty interest.

## A.

It is axiomatic that before due process protections can apply, there must first exist a protectible liberty or property interest. *Averhart v. Tutsie*, 618 F.2d 479, 480 (7th Cir. 1980). While an inmate does not have a protectible expectation of parole by virtue of the mere existence of a parole system, the Supreme Court in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), concluded that a specific statute governing parole release determinations may give rise to a liberty interest entitled to constitutional protection if it is phrased in such a way as to provide the inmates with a legitimate expectation of release on parole. In *Greenholtz*, the Court emphasized that their decision rested on the "unique structure and language" of the applicable Nebraska statute and cautioned that whether any other statute created a liberty interest would have to be decided on a case-by-case basis. *Greenholtz, supra*, 442 U.S. at 12, 99 S.Ct. at 2106.[2]

In this case, the applicable federal statute, 18 U.S.C. § 4206, states that inmates who are eligible for parole *shall* be released *if* certain conditions are met. The statute provides:

> If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and *if* the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

---

1. A committed fine is a fine for which a prisoner shall remain incarcerated, without being released on parole, until such time that the fine is paid or the prisoner is otherwise discharged according to law. *See* 28 C.F.R. § 2.7 (1980). *See also United States v. Estrada de Castillo*, 549 F.2d 583 (9th Cir. 1976).

2. This Court recently applied *Greenholtz* to the Illinois parole release statute, *Ill.Rev.Stat.* ch. 38, § 1003–3–5(c) (1979), and concluded that the statute provides an inmate with a legitimate expectation of parole which is entitled to constitutional protection. *See United States ex rel. Scott v. Ill. Parole and Pardon Board*, 669 F.2d 1185 (7th Cir. 1982).

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner *shall* be released.

18 U.S.C. § 4206(a) (emphasis added). The mandatory language of 18 U.S.C. § 4206(a) is emphasized by 18 U.S.C. § 4206(c),[3] which states that the Commission may not deviate from the guidelines[4] unless "good cause" exists to do so.

■ Only slightly different from the federal parole statute is the statutory procedure described in *Greenholtz*, which expressly mandated that the Nebraska Board of Parole *shall* order the inmate's release *unless* it decided that one of the four specified reasons for denial was applicable.[5] It

**3.** 18 U.S.C. § 4206(c) provides:

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provided,* That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

**4.** In 1973 the Parole Commission established a national parole policy and adopted parole guidelines to promote what it felt was a more consistent and equitable exercise of its discretion. See 28 C.F.R. § 2.20 (1976). The guidelines indicate the customary range of time to be served before release for various combinations of offense severity and parole prognosis characteristics. Under the guidelines an inmate's record is examined to determine his "salient factor score." This figure was designed statistically to predict the potential risk of parole violation and consists of seven weighted personal characteristics such as prior convictions and employment history. Next, the inmate's offensive behavior is classified on the "offense severity scale" in one of seven categories from "Low" to "Greatest II." This rating reflects the Parole Commission's independent, subjective evaluation of the gravity of the inmate's criminal behavior. Together, the salient factor score and the offense severity rating are used in conjunction with a table to determine a suggested time range during which the inmate should remain incarcerated.

was this "unique structure and language" of the Nebraska statute which created the expectancy of release. *Greenholtz, supra,* 442 U.S. at 12, 99 S.Ct. at 2106. The similarities between the Nebraska statute and 18 U.S.C. § 4206(a) lead us to the conclusion that 18 U.S.C. § 4206(a), with its provision that *if* the statutory and regulatory guidelines are met the inmate *shall* be released, gives rise to the same liberty interests as were found to exist in *Greenholtz.*[6] Under the mandatory language of the federal parole statute, an inmate has an expectation of parole worthy of due process protection.

**B.**

Having concluded that 18 U.S.C. § 4206(a) does create a constitutional liberty interest, it must now be determined whether the reason given to Solomon for denial of his parole request is constitutionally as well as statutorily sufficient.

**5.** *Neb.Rev.Stat.* § 83–1, 114(a) at the time provided:

Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

(a) There is substantial risk that he will not conform to the conditions of parole;

(b) His release would deprecate the seriousness of his crime or promote disrespect for law;

(c) His release would have a substantially adverse effect on institutional discipline; or

(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

**6.** A similar conclusion was reached by the Eighth Circuit in *Evans v. Dillahunty,* 662 F.2d 522 (8th Cir. 1981). The Fifth Circuit has concluded otherwise. *Page v. United States Parole Commission,* 651 F.2d 1083, 1086 (5th Cir. 1981) (per curiam). The Eighth Circuit in *Evans* correctly noted that the Fifth Circuit's opinion in *Page* contains no analysis of the federal parole statute to compare it with the Nebraska statute held in *Greenholtz* to create a limited liberty interest. *Evans, supra,* 662 F.2d 525 n.5.

In its notice to Solomon informing him of the decision to deny his parole request, the Commission stated:

> Your offense behavior has been rated as very high severity because of your involvement in the importation and distribution of large quantities of hashish and a currency violation. You have a salient factor score of 10 (see attached sheet). You have been in custody a total of 29 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 24–36 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense behavior involved the following aggravating factors: It was of unusual magnitude in that the hashish was valued in excess of $1,000,000 and was part of an international smuggling operation. As required by law, you have also been scheduled for a Statutory Interim Hearing during August 1981.[7]

Solomon characterizes this statement as being nothing more than a "pro forma recitation" and "catch-all" of factors.

In *United States ex rel. Scott v. Ill. Parole and Pardon Board*, 669 F.2d 1185 (7th Cir. 1982), this Court reexamined the test for determining whether a statement of reasons for a denial of parole is sufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. We approved the continued use of the standard originally adopted by the Second Circuit:

> To satisfy minimum due process requirements a statement of reasons should be sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all. For this essential purpose, detailed findings of fact are not required, provided the [Commission's] decision is based upon consideration of all

relevant factors and it furnishes to the inmate both the grounds for the decision ... and the essential facts upon which the [Commission's] inferences are based. *Id.*, at 1191. Quoting *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925, 934 (2nd Cir.), *vacated as moot*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974).

The statement of reasons given to Solomon meets this standard. The statement points out that the Commission denied his request for parole because of the unusual magnitude of Solomon's crimes—an aggravating factor that has taken his case out of the purview of the parole guidelines. The essential facts upon which the Commission's inferences are based—the importation, as part of an international smuggling operation, of hashish valued in excess of $1,000,000—are then adequately furnished. This listing of the essential facts also satisfies the second prong of 18 U.S.C. § 4206(c) which requires a "summary of the information relied upon."[8] While the "summary of information" in this case is not as complete as it might be, the Commission has demonstrated sufficient factual basis for its stated reason for denying parole.

In its entirety, the statement adequately informs Solomon of the grounds for the decision and also enables a court of review to determine whether parole has been denied for an impermissible reason. *See Garcia v. United States Board of Parole*, 557 F.2d 100, 105 (7th Cir. 1977). The notice is both constitutionally and statutorily sufficient.

### III.

Having determined that the Commission's statement of reasons is procedurally sufficient, we must next determine whether the magnitude of Solomon's offenses may be considered the "good cause" required to deny his request for parole notwithstanding the guidelines. Solomon argues that the amount of hashish involved, which was

---

7. This interim parole hearing was held in August of 1981 at which time Solomon's request for parole was again denied.

8. *See* note 3, *supra*.

originally considered in determining the offense behavior factor,[9] cannot be reconsidered as an extenuating circumstance justifying a decision outside of the guidelines. We disagree.

The legislative history of 18 U.S.C. § 4206(c) suggests that the "good cause" required to deny parole notwithstanding the guidelines is to be broadly construed:

> For the purposes of this section "good cause" means substantial reason and includes only those grounds put forward by the Commission in good faith and which are not *arbitrary, irrational, unreasonable, irrelevant or capricious.*

> The definition of what constitutes good cause to go outside the established guidelines can not be a precise one, because it must be broad enough to cover many circumstances.

> For example, in making a parole release determination above the guidelines, the Commission would consider factors which include whether or not the prisoner was involved in an offense with an unusual degree of sophistication or planning, or has a lengthy prior record, or was part of a large scale conspiracy or continuing criminal enterprise.

H.R.Conf.Rep.No.94–838, 94th Cong., 2d Sess. 27, *reprinted in* [1976] U.S.Code Cong. & Ad.News 335, 351, 359 (emphasis added).

 We conclude that the magnitude of an inmate's individual crime may be considered the "good cause" for which the Commission may deny parole notwithstanding the guidelines. *See, e.g., Izsak v. Sigler,* 604 F.2d 1205, 1206–07 (9th Cir. 1979); *O'Brien v. Putnam,* 591 F.2d 53, 55 (9th Cir. 1979); *United States ex rel. Jacoby v. Arnold,* 442 F.Supp. 144, 148 (M.D.Pa.1977). It is the extenuating circumstances of the particular offense, not the nature of the violation categorizing him in the guidelines, which must make up the necessary good cause. The reasons given by the Commis-

sion must go beyond those covering the salient factor score and the offense severity rating. *Little v. Hadden,* 504 F.Supp. 558, 562 (D.Colo.1980). The amount of hashish involved in this case surpassed the final guideline classifications by well over one thousand pounds. While we acknowledge that at some lesser point an amount must be considered part of the offense severity determination, in this case, the Commission properly considered the excessive amount of hashish involved as "good cause." Thus, the Commission's reasons for denying Solomon's request for parole—the excessive quantity of hashish involved, as well as the role this transaction played in an international smuggling operation—properly make up the required good cause to deny parole notwithstanding the guidelines. Such rationale cannot be said to be arbitrary, irrational, unreasonable, irrelevant or capricious.

## IV.

Solomon next contends that the Commission, in making the parole determination, relied on information that was factually incorrect which thereby tainted the entire parole determination. Specifically, Solomon claims that: (1) he accurately revealed his net worth to the district court prior to the sentencing; (2) a reference to heroin in his brother Ashok's hearing summary tainted his own parole determination; (3) the Parole Commission, as reflected in statements by the district court who described the drug-smuggling operation as "on-going," erroneously believed that the smuggling operation was still in existence; and (4) the Parole Commission overemphasized his involvement in the smuggling conspiracy. Solomon alleges that the sources of this erroneous information are the presentence reports which were relied upon by the Commission in making Solomon's parole de-

---

**9.** Because his offense involved possession of hashish in excess of 200 pounds (1,296 pounds), Solomon's offense severity factor was in the "very high" category. Possession of 20 to 199 pounds of hashish is a "high" severity offense; possession of 5 to 19.9 pounds is a "moderate" offense; possession of 1 to 4.9 pounds is a "low moderate" offense; amounts of less than one pound fall into the "low" category. *See* 28 C.F.R. § 2.20.

termination.[10] Solomon maintains that reliance on these presentence reports by the Commission constituted error.

Because Solomon challenges the propriety of the use of his presentence report in his parole hearing, it is helpful to review what the Parole Commission may properly consider in making their determinations.

It is clear that the Parole Commission has been granted wide discretion to review material which would be helpful in determining whether to release a prisoner on parole. Section 4207 of Title 18 lists the material that the Commission may consider:

(1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;

(2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;

(3) presentence investigation reports;

(4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge; and

(5) reports of physical, mental, or psychiatric examination of the offender.

The section concludes that "such additional relevant information ... as may be reasonably available" may also be reviewed by the Commission. See 18 U.S.C. § 4207.

The choice of information that the Commission may consider is thus quite broad. This is due in part to the acknowledged difficulty of their decisions. A parole decision has been described as "subtle and [one which] depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by Board members ..." Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, supra, 442 U.S. at 10, 99 S.Ct. at 2105 (1979). Along these lines, Congress has thus authorized the Commission to consider presentence reports, despite the knowledge that there are no formal limitations to their contents, that they might rest on hearsay, and that they may contain certain information bearing no relation whatsoever to the crime with which the defendant is charged. See Gregg v. United States, 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442 (1969).

In relying on information that has not been proved in an adversary setting, the Commission runs the risk of relying on inaccurate information. Partly for this reason, prior to the parole hearing prisoners are to be given reasonable access to documents which will be used in making the parole determination. See 18 U.S.C. § 4208(b)(2). At a hearing, an inmate is to be given an opportunity to present and respond to evidence. See 18 U.S.C. §§ 4207 and 4208(e). The right to counsel also exists. See 18 U.S.C. § 4208(d)(2). In the event that a prisoner disputes the information presented, the Commission is bound to a burden of proof for evaluating the conflicting claims. 28 C.F.R. § 2.19(c) provides in pertinent part:

If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the

---

10. The presentence report linked the appellant to a "large scale on-going smuggling operation," of which Ashok Solomon was the "head." In addition to extensive importation of hashish to the United States, the presentence report linked the appellant to hashish that was seized in Pakistan, India, and the Netherlands, as well as that seized in Minneapolis (which resulted in his arrest). All four seizures occurred within a three-month period and resulted in the confiscation of 14,356 pounds of hashish valued at $15,791,000. The presentence report also contained allegations that Ramesh Solomon retained substantial assets in several foreign countries. The report specifically listed Solomon's Canadian assets.

In his brother Ashok's hearing summary, which the appellant alleges to have tainted his own determination, there is a reference to heroin. The Government maintains that this is the result of merely a typographical error. Heroin was never mentioned in any of the appellant's records nor is there any evidence suggesting that it was a consideration in Ramesh Solomon's parole determination. Finally, an error in Ashok Solomon's "Notice of Action" is alleged to have also tainted the appellant's parole determination. Ashok Solomon's notice states that he smuggled $500,000 of currency into the United States. In reality, he and his brother smuggled $65,000 and were fined $500,000. No such error appears in any of the appellant's records.

preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability. * * *

In the immediate case, Solomon was given an opportunity to respond to the information presented to the hearing panel. With the assistance of counsel, Solomon did present evidence supporting his claims. The panel noted all of Solomon's contentions in their summary, just as they noted the conflicting information found in the presentence reports.

■ In any event, the panel recommended that parole be denied, not for reasons of the existence of overseas assets, heroin involvement, or the continuing existence of the smuggling operation, but because of the amount of hashish involved in the transaction to which he pleaded guilty and because the transaction was a part of an international smuggling operation. It was these factors which the Commission obviously considered highly significant, and it must be to these factors that we apply our limited scope of review.[11] It is undisputed that the hashish transaction to which the appellant pleaded guilty was part of an international smuggling conspiracy, of which Ashok Solomon was the acknowledged "head." While the appellant has denied certain facts concerning the smuggling operation,[12] the facts remain that a smuggling conspiracy did exist and that the appellant's offense was a part of this conspiracy. Because these significant factors in the Parole Commission's determination have not been disputed on appeal, our review need not go any further. Whether certain statements in the presentence report or a hearing summary are correct we need not decide. Only the facts which constitute significant factors in the Commission's decision are subject to our review.

### V.

Finally, Solomon claims that the Parole Commission overlooked a copious supply of positive information which, if it had been properly considered, would have made him a much more favorable parole candidate.[13] In order to properly review this alleged failure to consider positive information, Solomon urges this Court to create an exception to the limited standard of review which a reviewing court typically has over parole determinations. Solomon argues that when an "abundance" of favorable information exists, and when the information is coupled with a significant disparity between the prison time recommended by the Commission guidelines and the actual time served, a strong inference should be created that the Commission violated 18 U.S.C. § 4207 by failing to consider the positive information. In such instances, he argues, a reviewing court should apply a sufficiency of the evidence standard.[14] As precedent for this broad scope of review, appellant cites *Hearn v. Nelson*, 496 F.Supp. 1111 (D.Conn.

11. Because it is the highly significant facts which are reviewable by a court, it has been held that when contested facts appear to be highly significant to a decision by the Parole Commission, a defendant should be permitted to prove contrary facts in an evidentiary hearing on his petition for a writ of habeas corpus. *See Cox v. Benson*, 548 F.2d 186, 188 (7th Cir. 1977).

12. For example, the appellant presented evidence to the Parole Commission, in the form of the results of a lie detector examination, that he never used a Winnipeg boutique as a front to import hashish. He also denied that he ever imported hashish into Canada in partnership with one Ashok Dass.

13. For example, Solomon had no prior convictions at the time of sentencing in this case and has maintained a "blemish-free" record while in prison. Prior to his incarceration, he had a steady employment history. He is now engaged to be married. Solomon also states that upon his release he will be deported to India where he will face additional drug trafficking charges (thereby no longer making him a "threat" to American society).

14. In other words, a federal district court would then, under its habeas corpus jurisdiction, review the adequacy of the evidence on which the conclusions embodied in the statement of reasons are based.

1980), where a district court implicitly adopted such a standard.[15] We respectfully decline the appellant's invitation to adopt this broad standard of review.

The accepted standard of review of parole determinations is whether the decision constitutes an abuse of discretion.[16] The authority to review Parole Commission decisions is thus limited. Congress has given the Parole Commission the sole power to grant or deny parole in the exercise of its discretion. *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976). *See Persico v. United States Dept. of Justice*, 426 F.Supp. 1013, 1019 (E.D.Ill.1977), *aff'd* 582 F.2d 1286 (7th Cir. 1978). Courts have the authority to review decisions by the Commission which show an abuse of discretion. This review cannot be made without some inquiry into the evidence relied on by the Commission to support its expressed reasons for denying parole.

In order to determine whether there has been an abuse of discretion, the appellant urges this Court to adopt a "sufficiency of the evidence" standard of review for factual situations such as presented in this case. However, this standard exceeds that envisaged by Congress.[17] We choose to retain the traditional standard of review. A court of review need only determine whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons. The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons. *McArthur v. United States Board of Parole*, 434 F.Supp. 163, 166 (S.D.Ind.1976), *aff'd* 559 F.2d 1226 (7th Cir. 1977), quoting *Zannino v. Arnold*, 531 F.2d 687, 691 (3d Cir. 1976). It is this standard of review which we must use to evaluate the appellant's contentions.

15. In *Hearn*, the petitioner had been incarcerated for 66 months after a conviction for conspiring to distribute narcotics (heroin). He originally had been sentenced to consecutive three and twelve year prison terms. The Parole Commission gave Hearn a salient factor score of 9 and rated his offense severity as "high." The parole guidelines recommended a prison term of 14–20 months. The petitioner had an excellent institutional and prior work record. His post-release program included a definite employment plan with steady family, church and community involvement.

The district court, in issuing the writ of habeas corpus, stated that a strong inference that the Commission had failed to consider favorable information is created when an abundance of information favorable to the petitioner is coupled with a disparity between the period of incarceration suggested by the guidelines and the period actually served. *Hearn v. Nelson, supra*, 496 F.Supp. at 1115. The district court also noted that Hearn was denied parole "without any explanation of 'why . . . petitioner's specific criminal actions justified denial of parole.'" *Id.* at 1116. This factor is absent in Solomon's determination.

16. 18 U.S.C. § 4218(d) provides:

Actions of the Commission pursuant to paragraphs (1), (2), and (3) of section 4203(b) shall be considered actions committed to agency discretion for purposes of section 701(a)(2) of title 5, United States Code.
Section 4203(b)(1) provides:

The Commission, by majority vote, and pursuant to the procedures set out in this chapter, shall have the power to—
(1) grant or deny an application or recommendation to parole any eligible prisoner;
Section 701(a) of title 5 states:
This chapter [the judicial review provisions of the Administrative Procedure Act] applies, according to the provisions thereof, except to the extent that—
(1) statutes preclude judicial review; or
(2) agency action is committed to agency discretion by law.

17. The legislative history of the 1976 Parole Commission and Reorganization Act supports a more limited scope of review: "It is the intent of the Conferees that the Parole Commission make certain judgments pursuant to this section, and that the substance of those judgments is committed to the discretion of the Commission." H.R.Conf.Rep.No.94–838, 94th Cong., 2d Sess. 25, *reprinted in* [1976] U.S.Code Cong. & Ad.News 351, 358. In making individual parole decisions, the Commission must "weigh the concepts of general and special deterrence, retribution and punishment, all of which are matters of judgment," and apply the statutory criteria in a manner consistent with findings in other parole decisions. *Id.* Such consistency is possible only with an insulation of its decisions, within the confines of the discretion granted by statute, from judicial review. *Garcia v. Neagle*, 660 F.2d 983, 988 n.5 (4th Cir. 1981).

Although it is true that certain factors exist which are favorable to Solomon, they are only factors for the Commission to consider, which they did. Because a rational basis exists in the record to support the Commission's conclusions, the decision of the Parole Commission must not be disturbed. There has been no abuse of discretion by the Parole Commission.

VI.

For the reasons discussed in this opinion, the order of the district court is hereby AFFIRMED.