Matthew J. Flynn, Quarles & Brady, Milwaukee, Wis., for defendant.

**UNITED STATES of America, Plaintiff,**

v.

**Thomas MITTELSTEADT, Defendant.**

No. 83–CR–12.

United States District Court,
E.D. Wisconsin.

July 16, 1985.

### ORDER

WARREN, District Judge.

On June 5, 1985, the defendant in this action filed a motion to correct inaccuracies in the presentence report ("PSR") prepared by the United States Probation Office concerning the defendant. The defendant claims that the inaccuracies in the PSR have caused the United States Parole Commission to render an unduly high assessment of the severity of his offense, thereby eliminating his opportunity for release on parole. Since the Court has determined that it lacks jurisdiction over this matter, it will deny the defendant's motion.

On April 21, 1983, the defendant was convicted of two counts of false statements to influence a federally insured bank, in violation of 18 U.S.C. § 1014, and one count of wire fraud, in violation of 18 U.S.C.

§ 1343. The convictions related to the defendant's activities from late in 1979 to the fall of 1982, during which time he constructed fraudulent records for his family businesses in order to conceal their insolvency from creditors. The Court sentenced the defendant to a total of four years imprisonment.

The Government never attempted to prove the amount of the loss incurred by creditors as a result of the defendant's fraudulent actions, nor was it required to do so in order to establish his guilt. In the PSR, however, it was stated that the loss attributable to the defendant's fraud was $3,300,000.00. Although the defendant disputed both the amount of the alleged loss and the assertion that his actions had caused any loss, he was unable to offer concrete evidence to rebut the Government's claims. As a consequence of the uncertainty regarding the amount of the loss caused by the defendant's fraud, the Court refused to make any findings on that point at the time of sentencing.

The defendant now requests that the Court make the following express findings with respect to the harm caused by his fraudulent activities:

"(1) The companies through which Mittelsteadt engaged in illegal activity, Mittco, et al. earned a profit during the period of Mittelsteadt's fraud;

(2) Accordingly, any losses suffered by the victims of Mittelsteadt's crime, the creditors of Mittco, et al., predated Mittelsteadt's fraudulent conduct;

(3) The total loss to victims caused by or attributable to Mittelsteadt's offenses was zero.

(4) The Court makes no finding as to the validity or lack thereof of the government's claim relative to petitioner's personal gain, but it does expressly find that even if this claim is viewed unfavorably to the petitioner, then loss to victims remains at zero because the amount of the increase in net assets during the period of the fraud exceeded the alleged personal gain."

Defendant's Brief In Support Of Motion To Correct Inaccuracies In Presentence Report, p. 17. As evidence in support of these findings, the defendant has submitted copies of a financial analysis of Mittco and the related companies for the period December 1, 1979 through July 31, 1982. The pro forma analysis, prepared by a firm of certified public accountants, indicates that income of $963,678.00 was available for debt service during the period in question. By using an opportunity cost rate of interest as opposed to the higher contract rate, the accountants calculated the interest owed to creditors for this period as $759,223.00. Subtracting the interest paid, $277,722.00, from that amount yields an "actual" liability to the bank creditors of $481,501.00. When balancing this sum against the net income of $963,678.00, the accountants determined that net assets had increased by $482,177.00 during the period December 1, 1979 through July 31, 1982. Therefore, the accountants concluded that any losses suffered by bank creditors predated the period of the defendant's fraud.

While the Court does not intend to delve unnecessarily into the intricacies of the financial analysis, one further point cannot escape notice or comment. All of the amounts used to prepare the report were taken from the financial statements and records of Mittco and related companies without having been audited by the analysts. Viewing this fact in combination with other debatable aspects of the report described above, the Court is led to question whether this evidence is any more concrete than that available in the past.

■ The discussion thus far has veered too closely toward the merits of the motion which, it should be noted, both parties have agreed would require an evidentiary hearing to determine. Believing that the dispositive issue in the present matter concerns the Court's jurisdiction and that a decision on the merits need not be made, the Court will now address the jurisdiction question.

The defendant argues that jurisdiction is based upon the Court's "inherent" power

to correct inaccuracies, at any time, in the PSR. The defendant supports his argument by citing Rule 32(c)(3)(D), Federal Rules of Criminal Procedure, and the All Writs Act, 28 U.S.C. § 1651. Rule 32(c)(3)(D) allows the sentencing court to make findings with respect to alleged factual inaccuracies in the PSR. The All Writs Act, as its name suggests, enables federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions." While the defendant does not contend that jurisdiction exists solely by virtue of either Rule 32(c)(3)(D) or 28 U.S.C. § 1651, he does claim that these provisions betoken the Court's inherent power to grant the relief requested.

Contrary to the defendant's assertions, neither Rule 32(c)(3)(D) nor 28 U.S.C. § 1651 provides any assistance with respect to the jurisdiction issue. Rule 32 was amended to include the aforementioned subsection in August of 1983; it was not applicable at the time the defendant was sentenced, and the Court was not bound to make the findings required therein. *United ed States v. Darby*, 744 F.2d 1508, 1532 n. 22 (11th Cir.1984); *see also United States v. Stephens*, 699 F.2d 534, 538 (11th Cir. 1983). Section 1651 quite clearly is not applicable to the present matter since, by its terms, it allows federal courts to issue writs with regard to matters over which their jurisdiction has already been established.

Thus, the defendant's argument hinges upon his contention that the Court has the inherent and perpetual power to correct inaccuracies in the PSR, even after the sentencing process has long been completed. Although the defendant has cited two unpublished cases from this circuit where district judges did grant the defendants' motions to amend PSR's,[1] the overwhelming weight of authority conflicts with those decisions. Under 28 C.F.R. § 2.19(c), the Parole Commission has the responsibility for and authority to determine whether factual inaccuracies exist in information it takes into account relative to parole decisions:

> (c) The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond. If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability. However, the Commission shall not consider in any determination, charges upon which a prisoner was found not guilty after trial unless reliable information is presented that was not introduced into evidence at such trial (e.g., a subsequent admission or other clear indication of guilt).

Pursuant to 28 C.F.R. § 2.19(a)(3), information considered by the Parole Commission may include PSR's. Therefore, the majority of courts which have discussed the jurisdictional question now before the Court, including the Seventh Circuit Court of Appeals, have stated that the authority to resolve disputes over alleged factual inaccuracies in PSR's when such disputes arise in relation to parole determinations rests with the Parole Commission. *Solomon v. Elsea*, 676 F.2d 282, 288–89 (7th Cir.1982); *Castaldo v. United States Parole Commission, et al.*, 725 F.2d 94, 96 (10th Cir. 1984); *Anast v. United States Parole*

---

1. The cases cited by the defendant are *United States v. Hughes*, No. 80–30032–06 (S.D.Ill. June 29, 1984), and *United States v. Argentiere*, (citation not provided). The defendant submitted a copy of the *Hughes* decision, which is designated as Defendant's Exhibit 1, but has not yet provided the Court with a copy of *Argentiere*.

The *Hughes* decision is extremely short (two pages), and contains no discussion of the factual background of the case nor any citation whatsoever to precedential authority. Accordingly, the Court finds *Hughes* to be of minimal persuasive value, at best.

**890**

*Commission,* 739 F.2d 403, 404 (8th Cir. 1984); *Maynard v. Havenstrite,* 727 F.2d 439 (5th Cir.1984); *United States v. Leath,* 711 F.2d 119 (8th Cir.1983).

█ The defendant's argument that the Parole Commission has historically avoided such determinations in deference to the sentencing court is not persuasive. First, § 2.19(c) specifically allocates the authority to resolve matters such as this to the Parole Commission, which is to apply the preponderance of the evidence standard. Second, should the Parole Commission fail to perform this function, the defendant may then seek relief through a petition for a writ of habeas corpus to the district court in the district where he is confined. *Leath,* 711 F.2d at 121, fn. 2. A motion to the sentencing court or any other district court as an initial recourse would be premature, as administrative remedies would not yet be exhausted. *Maynard,* 727 F.2d at 441.

Finally, the defendant's contention that the sentencing court should retain jurisdiction over matters such as this runs contrary to the objective of securing final resolutions of criminal cases. Trial courts are already inundated with countless post-trial and post-sentencing motions from criminal defendants; to assume jurisdiction gratuitously over matters unrelated to the trial or imposition of sentence, when those matters have been explicitly delegated to another agency, merely retards the administration of justice and clouds the legitimacy of Congressional mandates.

For the foregoing reasons, the Court hereby **DENIES** the defendant's motion to correct alleged inaccuracies in the presentence report.