**Sam S. MISASI, Petitioner–Appellant,**

**v.**

**UNITED STATES PAROLE COMMISSION, Respondent–Appellee.**

**No. 86–2729.**

United States Court of Appeals, Tenth Circuit.

Dec. 21, 1987.

Bruce C. Houdek of James, Millert, Houdek, Tyrl & Sommers, Kansas City, Mo., for petitioner-appellant.

Connie R. DeArmound (Benjamin L. Burgess, Jr., U.S. Atty., and Alleen S. Castellani, Asst. U.S. Atty., with her, on brief), Topeka, Kan., for respondent-appellee.

Before MOORE, BALDOCK, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Sam S. Misasi, an inmate in the United States Penitentiary Camp, Leavenworth, Kansas, filed a petition for writ of habeas corpus in the United States District Court for the District of Kansas, naming the United States Parole Commission as the respondent[1]. In the petition, Misasi challenged the Parole Commission's fixing of his eligible-for-parole date. The district court ordered the Commission to show cause. The Commission thereafter filed an answer and return, to which Misasi filed a traverse. Based on the record, the district court denied the petition and dismissed the action. Misasi appeals.

From the record we learn that Misasi, a doctor of osteopathy, was charged in a six-count indictment in the United States District Court for the Western District of Missouri with dispensing a Schedule II narcotic controlled substance, such dispensing not being in the course of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1). The first five counts concerned the dispensing of Demerol containing pethidine, and the sixth count involved Dilaudid containing hydromorphone. Each count was based on a different transaction. Three of the unlawful prescriptions were

---

**1.** In *Dunn v. U.S. Parole Commission,* 818 F.2d 742, 744 (10th Cir.1987), the court held that a district court had subject matter jurisdiction over a habeas corpus proceeding despite the fact that the Parole Commission rather than the warden of the prison was named in the petition. The court reasoned that: "[a]lthough the Leav- enworth warden cannot be said to be indifferent to the resolution of Mr. Dunn's challenge, only in the most formal sense does he control whether Mr. Dunn is released ... [r]ather, ... the Commission directly control(s) whether Mr. Dunn remains in custody."

issued to a confidential informant acting under cover, and the other three were issued to a state highway patrolman, also acting under cover. Misasi pled guilty to all six counts and a pre-sentence report was ordered.

Misasi was sentenced to fifteen years imprisonment on each of the six counts, said sentences to be served concurrently.[2] Additionally, Misasi was fined $15,000 on each of the six counts, the fines totalling $90,000, and a special parole term of five years on each count was ordered. In imposing sentence, the district court acted in accord with 18 U.S.C. § 4205(b)(2), which provides that a district court may fix only a maximum sentence, with no minimum sentence, in which event the district court may specify, as it did in the instant case, that the prisoner may be released on parole at such time as the Parole Commission may determine.[3]

While confined in the United States Penitentiary Camp, Leavenworth, Kansas, Misasi initially appeared before the Parole Commission on October 29, 1985. Pursuant to the parole guidelines found at 28 C.F.R. § 2.20, Misasi was given a Salient Factor Score of 10 and an Offense Severity Rating of 4, which, under the rules and regulations of the Parole Commission, meant that Misasi would be eligible for parole after 14 to 20 months in custody.[4] However, the examiners from the Parole Commission who conducted Misasi's parole hearing recommended that Misasi be incarcerated for 60 months and only then be eligible for "presumptive parole." The reasons given by the examiners for setting Misasi's presumptive parole date outside, and beyond, the guidelines were as follows:

It is substantiated by the U.S. Attorney's report that subject [Misasi] was the largest illegal distributor of controlled substances in the Western District of Missouri and additionally, subject [Misasi] accepted stolen goods in exchange for controlled substances.

On January 4, 1986, Misasi appealed the examiners' recommended decision to the National Appeals Board, which denied the appeal. On May 25, 1986, Misasi filed the present habeas corpus proceeding.

The district court in the instant case concluded that the record supported the action taken by the Parole Commission in setting Misasi's parole date at 60 months, instead of the 14 to 20 months arrived at under the guidelines. On appeal, Misasi contends that the record simply does not support the Commission's action, and that the district court erred in entering judgment upholding the Commission's decision.

18 U.S.C. § 4206(c) authorizes the Commission to deny release on parole notwithstanding the guidelines if it determines that there is "good cause"[5] for so doing, provided that the prisoner is given written notice stating with particularity the Commission's reasons for going outside the guidelines, which notice includes a summary of the information the Commission relied upon in making its determination.

The Commission's Rules and Procedures Manual, Section 2.20–05, provides as follows:

### Decisions Outside the Guidelines

#### A. *In General*

18 U.S.C. 4206 provides that the Commission may render a decision outside the guidelines for good cause provided

---

**2.** This is the maximum term of imprisonment provided for in 21 U.S.C. § 841(b)(1)(A).

**3.** 18 U.S.C. § 4205(b)(1), provides that a district court may designate a minimum term, at the expiration of which the prisoner will be eligible for parole, and that such minimum term may be less than, but shall not be more than, one-third of the maximum sentence imposed by the court.

**4.** Misasi's Offense Severity Rating was set at 4, because less than 5 grams of opiates was in-

volved in the offense charged. His Salient Factor Score was set at 10, indicating a very good parole risk.

**5.** "Good cause" for exceeding Parole Commission guidelines exists when the Commission finds, for example, that the inmate is involved in an offense with an unusual degree of sophistication, has a lengthy prior record, or was part of a large scale conspiracy or continuing criminal enterprise. *Nunoz–Guardado v. Hadden,* 722 F.2d 618, 623 (10th Cir.1983).

the prisoner is furnished a specific explanation for such action. It is in the Commission's discretion to render a decision outside the guidelines (whether above or below) provided the circumstances warrant and such decision is adequately explained. The reasons given in the Notice of Action for a decision above or below the guidelines must explain what *specific facts* were relied upon to distinguish that case from the "typical" cases for which the guidelines are set. If a decision outside the guidelines follows the recommendation of the sentencing judge, the prosecutor or another interested party, it is not sufficient to cite that recommendation as the reason for departure from the guidelines. Instead, the Notice of Action must state the reasoning and factual basis for the recommendation which was found to justify a decision outside the guidelines (emphasis ours).

As indicated, the Parole Commission stated that in recommending a release date well beyond the release date suggested under the guidelines, its "rationale" was that Misasi's "offense behavior involved the following aggravating factors: It is substantiated by the U.S. attorney report that [1] subject was the largest illegal distributor of controlled substances in the Western District of Missouri and additionally, [2] subject accepted stolen goods in exchange for controlled substances." It is apparent, then, that although the Commission (its examiners to be more precise) had other written evidentiary matter before it, and had also conducted an evidentiary hearing wherein Misasi, with his attorney, appeared and offered testimony, the Commission's decision to go outside the guidelines was based solely on matter contained in a report of the United States Attorney. This report was prepared by the United States Attorney for use by the Commission at Misasi's hearing.

The report of the United States Attorney contains the following statements:

Dr. Sam S. Misasi, D.O., became one of the first targets for the Federal Drug Task Force in the Western District of Missouri. He was targeted by the Task Force because he had been described by both local and federal law enforcement agencies as the largest illegal distributor of controlled substances in this district, and possibly in the entire State of Missouri.

On six different occasions, Dr. Misasi sold completed prescriptions for controlled substances (demerol and dilaudid) to an informant and an undercover highway patrolman. He exchanged the scripts for what was *purported* to be "stolen property", including a log splitter, suits, a television, and other merchandise. (None of this merchandise was returned by the doctor.) (Emphasis ours.)

■ Analyzing the report of the United States Attorney, in the first paragraph the United States Attorney states that the reason why Misasi was targeted by the Task Force for undercover investigation was that he had been "described" by unnamed local and federal agencies as the largest illegal prescription distributor in the Western District of Missouri, if not the entire state. This information was the basis for "targeting" Misasi for the ensuing undercover investigation. Just how "large" is the largest illegal prescription distributor in Missouri, or the Western District of Missouri, is left to the reader's imagination. Such statement, in our view, does not measure up to the "specific facts" requirement of the Commission's own rules set forth above.

In the second paragraph of the United States Attorney's report, above quoted, the statement is made that on six occasions (the six occasions forming the bases for the six counts contained in the indictment) Misasi sold completed prescriptions for controlled substances to an informant and an undercover highway patrolman. Then comes the following statement: "He exchanged the scripts for what was *purported* to be 'stolen property', including a log splitter, suits, a television, and other merchandise. (None of this merchandise was returned by the doctor.)" (Emphasis ours.)

■ From the pre-sentencing report, which was before the Commission but was

not relied on by the Commission for going outside its guidelines, we learn that one of the six counts involved the giving of money by the undercover agents for drug prescriptions and that the remaining five counts involved the giving of merchandise in exchange for the prescriptions. Be that as it may, it seems clear to us from the report of the United States Attorney, which is in line with the pre-sentencing report, that the merchandise given Misasi by the undercover agents was not, in fact, stolen goods, although the undercover agents had indicated to Misasi that the merchandise was stolen. The Commission did not note this distinction, and flat out stated that Misasi had "accepted stolen goods in exchange for controlled substances."

We of course do not know if the Commission would have set Misasi's eligible-for-parole date at 60 months if it had recognized that none of the merchandise given Misasi by the undercover agents was in fact "stolen." If Misasi had in fact knowingly received on six different occasions stolen goods, he would have committed six state criminal offenses for which he could have been prosecuted, and such might well have been a significant factor to the Commission. But the fact is that none of the goods given Misasi for prescriptions by the undercover agents had been stolen. Possibly to some, receiving property that one is told is stolen property, even though it is not, is as heinous as receiving property that is in fact stolen, but the former scenario is still *not* a crime, as is the latter.

■ Courts are understandably slow to overturn decisions of the Parole Commission fixing the eligible-for-parole date of a prisoner. A decision by the Parole Commission may not be reversed by the courts unless it is arbitrary or capricious and an abuse of discretion. *Dye v. United States Parole Commission*, 558 F.2d 1376 (10th Cir.1977).

■ In *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir.1982), the Seventh Circuit spoke as follows:

The accepted standard of review of parole determinations is whether the decision constitutes an abuse of discretion. The authority to review Parole Commission decisions is thus limited. Congress has given the Parole Commission the sole power to grant or deny parole in the exercise of its discretion [citations omitted]. Courts have the authority to review decisions by the Commission which show an abuse of discretion. This review cannot be made without some inquiry into the evidence relied on by the Commission to support its expressed reasons for denying parole.

In order to determine whether there has been an abuse of discretion, the appellant urges this Court to adopt a "sufficiency of the evidence" standard of review for factual situations such as presented in this case. However, this standard exceeds that envisaged by Congress. We choose to retain the traditional standard of review. A court of review need only determine whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons. The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.

In the instant case, the "reasons" given by the Parole Commission for fixing Misasi's parole date at 60 months, instead of the 14 to 20 months arrived at under the guidelines, do not constitute a "rational basis" for its action. One reason is factually incorrect. The other reason is non-specific. Neither reason is supported by the report of the United States Attorney, upon which the Commission placed sole reliance.[6]

---

**6.** There, of course, is the suggestion in the record before the Commission that the six transactions which formed the basis for the six counts of the indictment were not the only times Misasi unlawfully wrote prescriptions.

However, as indicated, the record is too sketchy and non-specific as to the nature and extent of "other transactions," and whether such "other transactions" involved goods which were actually stolen goods is unknown. And, in any event,

Judgment reversed and case remanded to the district court with directions that the district court vacate its judgment and order, and that the district court then remand the matter to the Parole Commission with directions that it vacate its decision and order setting Misasi's parole date at 60 months, and that further proceedings before the Commission be consonant with the views herein expressed.

the Commission in going beyond the guidelines relied exclusively on statements contained in the report of the United States Attorney.