**Khalid Yousaf MALIK, Petitioner,**

**v.**

**Edward BRENNAN, Warden, Federal Correctional Institution, Oxford, Wisconsin, and The United States Parole Commission, Respondents.**

No. 90–C–233–C.

United States District Court,
W.D. Wisconsin.

June 22, 1990.

Keith A. Findley, Madison, Wis., for petitioner.

Mark Cameli, Madison, Wis., for respondents.

## ORDER

CRABB, Chief Judge.

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. Petitioner, an inmate at the Federal Correctional Institution in Oxford, Wisconsin, claims that the United States Parole Commission abused its discretion in rating his offense severity and in going beyond the parole guidelines in setting his parole eligibility.

From the affidavits and documentary evidence submitted by the parties, and for the purpose only of deciding this petition, I find the following facts.

### Facts

On April 28, 1981, petitioner was convicted of importation and distribution of heroin, and sentenced to fifteen years in prison by the United States District Court for the Northern District of Illinois.

Between 1981 and 1983, petitioner engaged in a conspiracy with a relative in his native land of Pakistan to import heroin. He conducted this conspiracy while he was incarcerated at the Federal Correctional Institution in Oxford.

On September 13, 1986, petitioner was convicted by the same court of conspiracy to import heroin, conspiracy to distribute heroin, and importation of heroin. This conviction was based on petitioner's activities while incarcerated between 1981 and 1983. On September 13, 1986, he was sentenced to twenty years in prison.

On July 27, 1988, an initial dispositional hearing was held before the Parole Commission at the Federal Correctional Institution at Oxford, Wisconsin to determine petitioner's parole eligibility date on his 1986 sentence.[1]

1. Petitioner had been on parole from his 1981 sentence since February 16, 1986. Originally, the parole board scheduled a combined hearing on the initial disposition of petitioner's 1986 sentence and revocation of parole on the 1981 sentence. However, when it came to the commission's attention that petitioner had been in prison and not on parole when he committed the conspiracy that formed the basis of the 1986 sentence, the commission did not revoke parole on the 1981 sentence.

The total amount of heroin involved in the conspiracy was disputed. In a prehearing assessment dated May 3, 1986, the reviewer Sanders noted,

The PSI also indicates a total amount of 150 ounces of heroin being imported during the time period charged in the indictment. We would like to call to the attention of the Panel that there appears to be error on page 2 of the PSI regarding the amount of heroin involved. There is indication that there was 150 grams and we are confident, based on the information on the previous page, that they are talking about ounces. So we calculated the amount on 150 ounces and not on 150 grams of heroin being imported.

The passage in the presentence investigation report to which this notation refers reads as follows:

*Details of the Offense.* The following statement was provided by Assistant U.S. Attorney Gerald Rafferty:

... During the period charged in the indictment, the government's evidence showed that Malik, while an inmate at the Federal Correction Institute at Oxford, Wisconsin, arranged the following heroin shipments:

(1) In 1983, Locke testified to the receipt of one shipment of cricket balls and one shipment in a Pakistan newspaper, containing approximately 80 *ounces* of heroin. In 1984, Locke testified to receipt of one shipment of cricket balls and one shipment of a Pakistani newspaper, containing a total of approximately 14 *ounces* of heroin.

(2) In 1983, Brook Ellis testified to receipt of three shipments of cricket balls, containing a total of approximately 24 *ounces* of heroin. In 1984, Ellis testified to one shipment of cricket balls containing approximately 8 *ounces* of heroin.

(3) In addition to the Locke and Ellis shipments, in January 1983, the government intercepted approximately 12 *ounces* of heroin destined for Abie O.Dell (Locke's friend) in Chicago, Illinois and another 12 *ounces* of heroin distined [sic] for an unknown person in Detroit, Michigan. Both shipments came from Liaquet Malik who would only ship the heroin on Malik's orders. (Malik bragged to Ellis that he ran the heroin operation in Pakistan).

Therefore, the government has proof of 150 *grams* of heroin being imported by Malik during the time period charged in the indictment.

(emphasis added).

To resolve the confusion in the presentence investigation report, on August 19, 1988, the parole commission phoned David Mishlove, who had prepared the presentence investigation report and asked him to clarify whether the total amount of heroin listed in the presentence investigation report was meant to refer to ounces or grams. In a letter dated August 22, 1988, David Mishlove wrote,

Although there were five counts involved in the sentence of Khalid Yousaf Malik, only one count involved drugs which the DEA was able to confiscate and test. That count was the third one, regarding the importation of heroin. It involved the importing of more than 20 ounces of heroin in January, 1983.

In conducting the presentence investigation, this officer went back to the DEA files rather than rely only on the government's statement; that is the customary method of investigation this officer follows. Those files indicated that there were 605 grams involved. That figure is about the same as "more than 20 ounces," inasmuch as there are 28.349 grams per ounce, or 566.98 grams per 20 ounces.

The DEA lab analysis of the 605 grams of heroin showed it was 63 percent pure, which means it was the equivalent of 381.15 grams (or 13.44 ounces) of 100 percent pure heroin. The DEA estimated its street value at that time as having been $2 million and its wholesale value as having been $150,000.

The commission rated petitioner's offense severity as Category Seven. The Offense Severity is determined under 28 C.F.R. § 2.20, which provides, in part, that "very large scale" heroin offenses involving between 2 and 5.99 kilograms of heroin

grade as Category Seven offenses, and that "large scale" offenses involving between 200 grams and 1.99 kilograms of heroin grade as Category Six offenses. In the Notice of Action, the commission stated the following reason for rating petitioner's offense severity as category seven:

> Your offense behavior has been rated as category SEVEN severity because you were involved in a conspiracy to import/distribute 150 ounces (4.25 kilograms) of heroin of unknown purity.

The commission gave petitioner a salient factor score of six. One of the factors that determined this score was whether petitioner had been on "probation, parole, confinement, or escape status at the time of the current offense." Because petitioner had been in prison during the conspiracy, he scored zero instead of one on this factor.

The guideline range for these scores is 64–92 months. However, the commission deviated from the guideline and gave petitioner a presumptive parole date of 120 months. The commission's Notice of Action states the following reason for this deviation:

> After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense behavior involved the following aggravating factors: You held a leadership role in a large scale ongoing sophisticated heroin importation network which operated since mid 1980 and which you continued to operate even while serving an earlier term for importation/distribution of heroin.

### OPINION

Petitioner challenges both the commission's decision to rate his offense severity as a Category Seven and the commission's decision to deviate from the guidelines.

#### A. Offense Severity Rating

1. Reliance on Presentence Investigation Report

■ The standard of review for Parole Commission decisions is whether the decision constitutes an abuse of discretion. *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir.1982). In reviewing the information on which the commission relied, courts need only determine whether the information is "sufficient to provide a factual basis for its reasons." *Id.* The inquiry is whether there is a rational basis in the record for the commission's conclusions. *Id.* The commission's discretion is limited by constitutional constraints of due process, which do not require examination of the record or weighing of the evidence. *Kramer v. Jenkins*, 803 F.2d 896, 900–01 (7th Cir.1986) (citing, *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). However, a parolee's right to due process would be violated if the commission made a parole decision based on information that was "obviously false or of such an untrustworthy nature that no reasonable factfinder would rely on it." *Fatico v. Kerr*, 569 F.Supp. 448, 451 (W.D.Wis.1983).

■ Petitioner contends that because the presentence investigation report is ambiguous on its face, it was untrustworthy information and that the Parole Commission abused its discretion by relying on it to conclude that the total amount of heroin involved in the conspiracy was 150 ounces. Although petitioner is correct that the presentence investigation report is ambiguous, it was not an abuse of discretion for the commission to resolve the ambiguity by concluding that the total amount of heroin involved in the conspiracy was 150 ounces, not 150 grams. It was not unreasonable for the commission to draw the inference that the disparity between references to "ounces" in the description of the codefendant testimony and "grams" in the total amount of heroin involved was a clerical error. Although the communication from David Mishlove does not address the ambiguity directly, it does confirm that the Drug Enforcement Agency seized 605 grams of heroin and that the heroin seized by the Drug Enforcement Agency was only a portion of the total heroin involved in the conspiracy. This information defeats an inference that the total amount of heroin involved was 150 grams.

■ Petitioner objects also to any reliance on the alleged codefendant testimony described in the presentence investigation report because it is unsubstantiated by testimony at trial. This argument is without merit. The commission has the discretion to rely on "a vast range of information, including hearsay and offenses for which the defendant has not been charged." *Kramer*, 803 F.2d at 900. It is well settled that the commission may rely on statements in the presentence report, even when the trial court has disclaimed reliance on that information, if the commission "finds the information sufficiently accurate for its own purposes." *Id.* The fact that the statements made to the United States Attorney by codefendants were not introduced at petitioner's trial does not make the commission's reliance on them unreasonable.

For these reasons, I conclude that the commission did not abuse its discretion by relying on the presentence investigation report for its conclusion that the total amount of heroin involved in the conspiracy was 150 ounces.

## 2. Statement of Reasons

■ The Parole Commission must state the reasons for its parole decisions. Its statement of reasons must be "sufficient to enable a reviewing body to determine whether parole has been denied for an impermissible reason or for no reason at all." *Solomon*, 676 F.2d at 286 (quoting *United States ex rel. Johnson v. Chairman of New York State Board of Parole*, 500 F.2d 925, 934 (2nd Cir.), *vacated as moot*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974)). It must furnish the inmate "both the grounds for the decision and the essential facts upon which the Commission's inferences are based." *Id.*

In arguing that the commission's statement of reasons was inadequate in this case, petitioner relies on *Marshall v. Lansing*, 839 F.2d 933 (3rd Cir.1988), for the proposition that, while a "brief, even superficial, statement of reasons is sufficient ... in the ordinary case," something more is required when the factual basis for the

commission's decision is unclear. *Id.* at 942. In *Marshall*, allegations in the presentence report revealed "without too much hypothesizing or speculation," that 650 grams of pure cocaine was sold by Marshall. However, "a reasonably intelligent person who was familiar with the relevant facts of the case and who had read the Commission's perfunctory explanation would still not have understood how the Commission reached its conclusion" that Marshall had been involved with selling one kilogram of cocaine. *Id.* Therefore, the court concluded, "[w]here reasoning beyond simple arithmetic or obvious inferences is required to draw the conclusions upon which the Commission relies, we see no reason why the formal statement of reasons should not provide the crucial missing logic." *Id.*

Unlike *Marshall*, in this case, simple arithmetic and obvious inferences supply the answer to how the commission arrived at its conclusion that petitioner's conspiracy had involved 150 ounces of heroin. The presentence report states that co-conspirators testified to involvement in shipments of 80 ounces, 14 ounces, 24 ounces, and 8 ounces of heroin. In addition, it states that the government seized two shipments of 12 ounces each. Simple arithmetic provides a total of 150 ounces. It is obvious from the commission's statement that it believed the statement that the total was 150 grams to be a clerical error. Therefore, I conclude that the commission provided an adequate statement of reasons for determining that petitioner's offense severity rating was category seven.

## B. Deviation from Guidelines
### 1. Good Cause Requirement

The Parole Commission may deviate from the guidelines in setting a parole release date if it determines there is good cause for so doing and if the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information on which it relied. 18 U.S.C. § 4206(c). The definition of "good cause" is broad, covering any "substantial reason ... put forth

by the Commission in good faith and which [is] not arbitrary, irrational, unreasonable, irrelevant or capricious." *Solomon*, 676 F.2d at 287 (quoting H.R.Conf.Rep. No. 94–838, 94th Cong., 2d Sess. 27, *reprinted in* 1976 U.S.Code Cong. & Admin.News 335, 351, 359).

In this case, the commission gave the following statement to justify its decision to go beyond the guideline range:

> You held a leadership role in a large scale ongoing sophisticated heroin importation network which operated since mid 1980 and which you continued to operate even while serving an earlier term for importation/distribution of heroin.

Petitioner objects to the generality of the terms "large-scale," "sophisticated," and "ongoing" and their applicability to his offenses. He relies on *Misasi v. U.S. Parole Commission*, 835 F.2d 754 (10th Cir.1987), which found inadequate a parole commission's reliance on a United States Attorney's statement that the petitioner "had been described by both local and federal law enforcement agencies as the largest illegal distributor of controlled substances in this district." *Id.* at 757.

■ Although terms like "large-scale," "ongoing" and "sophisticated" are somewhat lacking in specificity, I conclude that the commission's statement is sufficient for two reasons. First, unlike the commission in *Misasi*, the commission used the words to characterize the evidence of petitioner's activities instead of merely repeating a general characterization found in the evidence before it. Second, a reading of the statement as a whole suggests that the factor most important to the commission was not the size or sophistication of the operation, but the fact that it was carried out from within the prison walls, while petitioner was serving a sentence for the very same type of activity. The fact that petitioner would continue his importation activities while he was in prison is evidence of a blatant and callous disregard for the message that this society is trying to give him by incarcerating him, and it constitutes good cause for going beyond the guidelines in setting his presumptive parole date.

## 2. Double-counting

■ Double-counting occurs when the parole commission considers as a basis for continuing an inmate beyond the guidelines the same factors it used either to place the inmate in a particular severity category or to calculate his salient factor score, or both. The Court of Appeals for the Seventh Circuit has held that such double-counting constitutes an abuse of discretion. *Romano v. Baer*, 805 F.2d 268, 271 (7th Cir.1986); *Solomon v. Elsea*, 676 F.2d 282 (7th Cir.1982). Petitioner contends that the commission engaged in double-counting in two respects: (1) it considered the magnitude of the conspiracy both in determining the severity category and as a factor in deviating from the guidelines, and (2) it considered the fact of his incarceration at the time the crimes were committed both in determining his salient factor score and in going beyond the guidelines.

In *Solomon*, the Court of Appeals for the Seventh Circuit ruled that it was permissible to consider the magnitude of a crime in going beyond the guidelines when "the amount of hashish involved ... surpassed the final guideline classifications by well over a thousand pounds." 676 F.2d at 287. However, the court recognized that "at some lesser point the amount must be considered part of the offense severity determination." *Id.*

In this case, the total amount of heroin allegedly involved in the conspiracy is well within the guidelines. It does not even fall within the highest possible level in the guidelines, much less exceed that level. Therefore, if the magnitude of petitioner's conspiracy had been the only factor justifying the commission's decision to go beyond the guidelines, petitioner might be entitled to relief. However, it was not the only factor on which the commission relied. *See Pilotto v. U.S. Parole Commission*, 857 F.2d 474, 477 (8th Cir.1988) (parole commission did not abuse its discretion when three out of the four factors on which it relied were unique).

■ Petitioner's argument that the commission's reliance on the fact that he was in prison when he participated in the con-

spiracy constitutes double-counting because it was taken into account in his salient factor score is unconvincing. Petitioner lost a point in his salient factor score because he had been on "probation, parole, confinement, or escape status" at the time of his offense. Although his confinement status is important in both determinations, the fact that petitioner continued to import heroin within months of being imprisoned for the offense of importation is significantly more egregious than the fact of his status alone. In going beyond the guidelines, the commission recognized that petitioner's flouting of the criminal laws was different in quality from the behavior of someone who attempts to rehabilitate himself but experiences a set-back and ends up committing another crime while on probation or parole. The commission did not abuse its discretion in making this determination.

## ORDER

IT IS ORDERED that petitioner's petition for a writ of habeas corpus is DENIED and this case is DISMISSED.