**James W. LEWIS, Petitioner–Appellant,**

**v.**

**Art BEELER, Warden; and the United States Parole Commission, Defendants–Appellees.**

**No. 90–6299.**

United States Court of Appeals, Tenth Circuit.

Nov. 13, 1991.

Donald V. Morano, Chicago, Ill., for petitioner-appellant.

Michael A. Stover, Gen. Counsel, U.S. Parole Com'n (Kristie K. Stafford, Atty., U.S. Parole Com'n, Chevy Chase, Md., with him, on the brief, Timothy D. Leonard, U.S. Atty., and Ronny D. Pyle, Asst. U.S. Atty., Oklahoma City, Okl., of counsel), for defendants-appellees.

Before SEYMOUR and EBEL, Circuit Judges, and MATSCH, District Judge.*

EBEL, Circuit Judge.

This appeal raises the following four questions:

1. Can evidence that was known by investigative agencies but not by the United States Parole Commission ("the Commission") at the time of a prisoner's initial parole determination be considered "new information" sufficient for the Commission to reopen the prisoner's case under 28 C.F.R. § 2.28(f)?

2. Once a prisoner's case is reopened, can the Commission consider information in a sentencing transcript where

    A. the transcript, though previously unseen by the Commission, was not the basis for reopening;

---

* The Honorable Richard P. Matsch, of the United States District Court for the District of Colorado, sitting by designation.

B. the information pertains to a crime for which the prisoner was not charged but which was related to the crime for which he was convicted; and

C. the district judge declined to consider the information at sentencing?

3. Was the district judge's statement during sentencing that there was not a "shred of evidence" that the Petitioner–Appellant (Lewis) committed the Tylenol murders merely a reiteration of his assurance that he was not going to consider any evidence of that crime since Lewis was not so charged, rather than a finding on the merits of such an allegation pursuant to Federal Rule of Criminal Procedure 32(c)(3)(D)(i)?

4. Did the Commission act within its discretion in determining that Lewis committed murder by lacing Tylenol capsules with cyanide?

We answer all of these questions in the affirmative.[1]

## FACTS

Following the deaths of seven people from the ingestion of Tylenol capsules laced with cyanide, Lewis mailed a letter to Johnson & Johnson, Inc., the makers of Tylenol, threatening to continue lacing Tylenol with cyanide unless the company wired $1 million to a specified bank account. Although not charged with the killings, Lewis was charged with and convicted of extortion on the basis of that letter.[2] He received a ten year sentence which was to run consecutively to two concurrent ten year sentences that he received for other federal crimes. At sentencing, the prosecutor suggested that Lewis was a suspect in the Tylenol murder case, to which the judge responded that he would not consider that suggestion because Lewis had not

been charged for or convicted of the Tylenol murders and there was not "a shred of evidence" before him linking Lewis to the Tylenol murders. Record, Doc. 13, Ex. T at 16, 54 (hereinafter "Tr.").

The Parole Commission ultimately received Lewis's case. On January 6, 1988, after an initial hearing, the Commission informed Lewis that it would presumptively grant parole after he had served his minimum sentence of eighty months. Thus, Lewis was due to be released on August 27, 1989. This determination was affirmed by a "no change" notice of March 9, 1989 signed by Victor Reyes, the Regional Commissioner for the South Central Region in Texas.

On February 17, 1989, however, one of Lewis's prosecutors, Anton Valukas, sent a letter to the Commission Chairman, Benjamin Baer, in Maryland urging an extension of Lewis's parole date. Attached to Valukas's letter was a letter written by Lewis to President Reagan essentially threatening to kill more people with cyanide-laced Tylenol and to kill Reagan with a radio controlled airplane bomb if income taxes were increased or payroll taxes were not abated.[3] On March 9, 1989, a second of Lewis's prosecutors, Jeremy Margolis, sent a letter to Baer urging an extension of Lewis's parole date. Baer forwarded these letters to Reyes, the Regional Commissioner in Texas. Reyes apparently had no access to these letters prior to his issuance of the March 9, 1989 "no change" notice.

Based on these letters, on April 13, 1989, Reyes recommended that the National Commissioners reopen Lewis's case. The National Commissioners ordered the case reopened on the basis of new and adverse information on April 27, 1989, but failed to specify the information to which they re-

1. Lewis has filed a motion to supplement the record. However, we find nothing in his proposed supplement that was before the Commission which is not already in the record. Accordingly, the motion to supplement the record is DENIED.

2. Although Lewis wrote the letter to Johnson & Johnson, he signed it in the name of his wife's ex-boss and requested that the money be wired to the ex-boss's account. Lewis claimed that he

wrote the letter to get revenge for a bad check that the ex-boss wrote to Lewis's wife. Thus, the prosecutors apparently did not view the letter as a sufficiently clear admission of the Tylenol murders to charge Lewis with those murders.

3. Like Lewis's letter to Johnson & Johnson, his letter to President Reagan was signed in the name of his wife's ex-boss.

ferred. On July 20, 1989, the Commission corrected its order to specify the letters from the prosecutors and the letter to Reagan as new and adverse information.

At a hearing on August 21, 1989 the Commission acknowledged the delay in correcting its order. The Commission also informed Lewis that it intended to rely on information in the transcript from his sentencing, which had been submitted to the Commission by Lewis, to determine whether he committed the Tylenol murders. For these reasons the Commission offered Lewis the option of asking for a continuance. Both Lewis and his attorney explicitly declined to request a continuance and elected to proceed with the hearing.[4]

Following the hearing, the Commission determined that Lewis was indeed the Tylenol murderer and accordingly raised his Offense Severity Level from Category 6 (for extortion) to Category 8 (for murder). Placing Lewis in Category 8 permitted the Commission to deny him parole, forcing him to serve his full sentence.

Lewis appealed this decision to the Full Commission, which affirmed it. Subsequently he petitioned the district court for habeas corpus, which was denied. He now appeals the district court's denial of his petition based on four grounds.

First, Lewis argues that neither the letters from the prosecutors nor his letter to President Reagan constitute new evidence as required for the Commission to reopen his case. Second, he argues that the Commission, after reopening his case, improperly considered evidence in his sentencing transcript of an uncharged crime. Third,

he argues that the Commission was precluded from finding that he was the Tylenol murderer by a statement by the sentencing judge that there was not "a shred of evidence that he is guilty of the Tylenol murders...." Tr. at 54. And Fourth, he argues that the evidence provided an insufficient basis for the Commission's conclusion that he was the Tylenol murderer. We disagree with all of these arguments.

## DISCUSSION

### I.

■■■ Lewis's threatening letter to President Reagan, which the Commission had not seen prior to its initial determination regarding Lewis, provided a sufficient basis for reopening his case.[5] The Commission can reopen a prisoner's case when it receives "new and significant adverse information." 28 C.F.R. § 2.28(f). Lewis's letter to President Reagan was both new and significant.

For purposes of § 2.28(f), information is new if it was not received by the Commissioner prior to the decision that is to be revisited. *McClanahan v. Mulcrome*, 636 F.2d 1190, 1191 (10th Cir.1980) (per curiam); *Fox v. United States Parole Comm'n*, 517 F.Supp. 855, 859 (D.Kan.), *aff'd*, No. 81–1432, 1981 WL 37344 (10th Cir. Nov. 23, 1981). Lewis does not contradict the Commission's assertion that the Regional Commissioner had not received his letter to President Reagan prior to either the initial decision regarding his parole or the "no change" determination.[6] Thus,

---

4. Because Lewis explicitly declined to request a continuance, we do not consider his argument on appeal that either the time between the corrected notice and his hearing, which was below the statutory minimum notice time, or the Commission's reliance on information not contained in the notice, violated his due process rights under the Fifth Amendment.

5. Because we find that one of the bases on which the Commission relied in reopening Lewis's case (his letter to President Reagan) was sufficient, we do not need to decide whether the other two bases (the letters from the prosecutors) would also suffice.

6. Lewis points out that the National Commissioner in Maryland had received Lewis's letter to President Reagan prior to the date on which the Regional Commissioner in Texas issued a "no change" notice. However, the relevant party in this case, for purposes of § 2.28, was not the National Commissioner but the Regional Commissioner. Section 2.28(f) is clearly designed to ensure that parole decisions are based on all available, relevant information. *See Fox*, 517 F.Supp. at 859. Thus, the relevant party for purposes of that regulation must be the actual decisionmaker. The Regional Commissioner issued the "no change" notice and must therefore be considered the relevant party with respect to that notice. Because he did not see the letter, it

the letter can be considered new for purposes of § 2.28(f).

Lewis cites *Ready v. United States Parole Comm'n*, 483 F.Supp. 1273, 1276–77 (M.D.Pa.1980), for the proposition that information cannot be considered new for purposes of reopening a parole decision where the Commission was aware of the allegations that the information is used to support but declined at the time of the initial parole decision to seek such information regarding those allegations. In *Ready* the Commission was aware during its initial hearing that the prisoner had allegedly engaged in prison misconduct but thought the evidence before it insufficient to support these allegations and did not seek additional information on the matter. The court held that the Commission could not subsequently reopen the case based on new evidence supporting the same allegations. *Id.*

Unlike the situation in *Ready*, there is no indication in Lewis's case that the Commission knew of allegations that he was the Tylenol murderer at the time it made its initial parole determination. He was convicted only of extortion and neither his presentence report nor the pre-hearing report for his first parole determination made any allegation that he was the Tylenol murderer.

▮ Further, even if the Commission were aware of these allegations, we respectfully disagree with the reasoning of *Ready*. The Commission is not like a court. *See Fox*, 517 F.Supp. at 859. It does not get only one chance to review allegations against a prisoner. Rather, its function is to make the best possible determination of a prisoner's parole risk based on a continuing evaluation. Because the Commission is not primarily an investigative body and must depend largely on interested parties for relevant information, it will sometimes need to review previously considered allegations in light of newly received information. It is for this reason that the Commission is given the power to reopen cases. *Ready*, to the extent it gives the Commission only one chance to evaluate any particular allegation, would turn the Commission into both a court and an investigator. We cannot agree that these were its intended functions. *Cf. McClanahan*, 636 F.2d at 1191 (mistake in parole calculation new when brought to attention of Commissioner).[7]

Thus, we hold that information is new for purposes of § 2.28(f) where it has not been considered by the Commissioner who made the decision which the Commission seeks to reopen. Accordingly, Lewis's letter to President Reagan was new. Additionally, it is clear that the extortionate letter was significant to Lewis's case, as he was serving a sentence for extortion. Hence, the Commission was justified in reopening its decision to grant him parole.

## II.

Lewis next advances three arguments suggesting that the Commission could not consider evidence in his sentencing transcript. First, he argues that the Commission cannot consider the transcript because it was not one of the bases for opening the hearing. Next, he argues that it was improper to consider evidence from the transcript of crimes with which he was not charged. Finally, he argues that the Commission could not consider evidence regarding the Tylenol murder because the sentencing judge declined to consider this information. We disagree with all of these arguments.

▮ Section 2.28(f), which authorizes the Commission to reopen a case based on new and significant adverse information, does not limit the Commission's attention to the information that was the basis for the re-

---

was new with respect to the "no change" notice for purposes of § 2.28(f).

Because both the Commission's initial determination and its "no change" determination were made without the benefit of Lewis's letter to President Reagan, we do not need to decide which of these two decisions was the relevant one for purposes of § 2.28(f).

7. At least two other circuits and one district court in this circuit have explicitly rejected *Ready*'s narrow definition of newness. *See Torres–Macias v. United States Parole Comm'n*, 730 F.2d 1214, 1216–17 (9th Cir.1984); *Fardella v. Garrison*, 698 F.2d 208, 211 (4th Cir.1982); *Fox*, 517 F.Supp. at 858–59. No court besides *Ready* appears to have adopted its definition.

opening. In fact, § 2.28(f) explicitly requires that the reopened hearing be conducted pursuant to § 2.13, which sets out the procedure for the initial hearing. Thus, we can infer that the procedure at the reopened hearing must be the same as that at the initial hearing, where there is no restriction on the information that the Commission can consider.[8] We have no doubt that at the initial hearing the Commission could have considered the transcript had it been submitted. Here, Lewis cannot argue that the Commission should not have considered the sentencing transcript and the recommendations and information contained therein, especially given the fact that it was Lewis who submitted the transcript to the Commission.

■ We also have no doubt that the Commission properly considered evidence relating to a crime with which Lewis was not charged. We have recently upheld the right of the Commission to consider conduct for which a prisoner was not charged so long as there is a connection between the uncharged behavior and the crime with which the prisoner was sentenced. *See Fiumara v. O'Brien*, 889 F.2d 254, 257–58 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2563, 109 L.Ed.2d 746 (1990). There was clearly such a connection between Lewis's extortion conviction and the Tylenol murders.

Finally, it is clear that the Commission can consider information that the sentencing judge declined to consider. *Id.* Thus, to the extent that the sentencing judge declined to consider evidence linking Lewis to the Tylenol murders, the Commission was entitled to draw its own conclusion from that information.

### III.

■ Lewis argues that the judge's statement at his sentencing hearing that there was not "a shred of evidence that [Lewis] is guilty of the Tylenol murders," Tr. at 54,

precluded the Commission from finding to the contrary. We disagree.

This statement by the district court was not a finding under Federal Rule of Criminal Procedure 32(c)(3)(D) as to any allegation in a pre-sentence report that Lewis was the Tylenol murderer. No such allegations appeared in any pre-sentence report and, consequently, Lewis had no occasion to request (nor did he request) a Rule 32(c)(3)(D) determination regarding whether he was, in fact, the Tylenol murderer. Rather, this statement, when considered with other statements made by the sentencing judge, was simply an assurance to Lewis that the court was not going to allow or consider any evidence regarding whether Lewis committed the Tylenol murders. Tr. at 16, 54. This, of course, could not preclude the Commission from considering the matter because the Commission has a broader mission: to consider matters related to the charged offense even though they go beyond the charge itself.

Even if we were to treat the "shred of evidence" statement as a Rule 32(c)(3)(D) determination, however, we would conclude that it did not constitute a finding that Lewis did not commit the Tylenol murders. Instead, it would more properly be considered a determination under Rule 32(c)(3)(D)(ii) that the court simply would disregard that evidence for purposes of its sentence. A judge may treat information which is disputed in a pre-sentencing report in one of two ways: The judge can "make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." Fed.R.Crim.P. 32(c)(3)(D).

■ Whatever may be the impact of a finding of fact under Rule 32(c)(3)(D)(i), the judge's decision not to consider evidence under Rule 32(c)(3)(D)(ii) cannot bind the Commission. "After all, the judge has not found the [Rule 32(c)(3)(D)(ii)] allegations false; he has simply found them questiona-

---

8. Because the sentencing transcript and the information in it that formed the basis for the Commission's decision in Lewis's case was new to the Commission, we do not decide here whether the Commission can revisit or base a new determination on previously considered information after reopening a case on the basis of other new information.

ble or irrelevant for the purpose of sentencing." *Kramer v. Jenkins,* 803 F.2d 896, 900 (7th Cir.1986).

■ While this circuit does not yet appear to have decided this issue, at least five other circuits have reached the conclusion that the Commission may consider information that the sentencing judge determined, pursuant to Rule 32(c)(3)(D)(ii), to exclude from his or her sentencing consideration. *See Coleman v. Honsted,* 908 F.2d 906, 907–08 (11th Cir.1990) (per curiam); *Blue v. Lacy,* 857 F.2d 479, 481 (8th Cir.1988) (per curiam); *Hackett v. United States Parole Comm'n,* 851 F.2d 127, 131 (6th Cir.1987) (per curiam); *Ochoa v. United States,* 819 F.2d 366, 372 (2d Cir.1987); *Kramer,* 803 F.2d at 900. We find their reasoning persuasive. Further, no circuit appears to take a contrary position.

Notwithstanding the strength of the sentencing judge's language, we find that his statement that there was not "a shred of evidence that [Lewis] is guilty of the Tylenol murders," Tr. at 54, was not a finding under Rule 32(c)(3)(D)(i) as to whether Lewis, in fact, committed the Tylenol murders. The statement was made in the context of the Judge's assurance to Lewis that he would not consider this evidence for sentencing.[9] Throughout the sentencing hearing, the judge made similar assurances to Lewis, as Lewis contested information that was in the pre-sentence report or offered by the prosecutor. *See* Tr. at 16, 31, 35, 40, 54, 59. Essentially, the judge was simply assuring Lewis that he was not going to consider, in the proceedings before him, the allegation that Lewis was the Tylenol murderer:

I have made a very deliberate effort, both during the trial with the jury and in my own mind, to discount any suggestion that you [Lewis] may be connected with the Tylenol murders. Mr. Webb [the prosecutor] has his own views and his own concerns on the matter. But I re-

gard it as my duty to consider, in this sentencing, only evidence of such crimes as you have been convicted of. Since you have not been charged or convicted of the Tylenol murders I will not consider any suggestion that your possible connection with those is a factor I should consider in this sentencing. So for that reason you can accept my assurance that I won't consider that and need not take time to comment on Mr. Webb's suggestions along those lines.

Tr. at 16–17.

Thus, the "shred of evidence" statement was not a finding, but rather a further assurance that the judge had declined to take evidence on that issue. Accordingly, the Commission was not precluded by that statement from finding that Lewis was indeed the Tylenol murderer.

### IV.

Lewis's final argument is that even if the conclusion that he was the Tylenol murderer was not precluded, it was insufficiently supported by the evidence. We disagree.

■ Lewis's sufficiency of evidence argument rests, in large part, on an erroneous conclusion about the appropriate standard of review: Lewis asserts that we must overturn a Commission finding that is not supported by "substantial evidence." For this proposition he cites *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299, 59 S.Ct. 501, 504, 83 L.Ed. 660 (1939) and *Dayton Tire & Rubber Co. v. NLRB,* 591 F.2d 566, 569 (10th Cir.1979). These cases, however, explain the standard for reviewing findings made by the NLRB—a standard that is prescribed in a statute specific to that agency. The appropriate standard of review for the Parole Commission, in contrast, is "whether the decision is arbitrary and capricious or is an abuse of discretion." *Fiumara,* 889 F.2d at 257 (citing, among other authorities, *Mi-*

---

**9.** The entire sentence was:
The emotional associations that go with the word Tylenol in connection with this case cannot be allowed to rub off on Mr. Lewis since there is no shred of evidence that he is

guilty of the Tylenol murders and no suggestion along those lines should be allowed to influence my judgment in this matter.
Tr. at 54.

**332**

sasi v. United States Parole Comm'n, 835 F.2d 754, 758 (10th Cir.1987)).

In *Misasi* we discussed the appropriate standard for reviewing Commission decisions:

A court of review need only determine whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons. The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.

835 F.2d at 758 (quoting *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir.1982)).

■■ The record provides a rational basis for the Commission's conclusion that Lewis was the Tylenol murderer. The sentencing transcript indicates that Lewis provided detailed explanations to investigators of how the crime might have been perpetrated, albeit for purposes of aiding their investigation. Tr. at 13–14. Further, his letter to President Reagan constitutes an inferential admission, however suspect, that he was the Tylenol murderer. While we might not have concluded that Lewis was the Tylenol murderer based on this evidence, it provides a rational basis for the Commission's finding to that effect. Thus, the Commission did not abuse its discretion in finding that Lewis was the Tylenol murderer.

Accordingly, the district court's denial of Lewis's petition is AFFIRMED.