Jeffrey R. MULBERRY, Applicant,

v.

Donice NEAL, Warden of Arrowhead Correctional Center, and The Attorney General of the State of Colorado, Respondents.

No. Civ.A. 99–K–2347.

United States District Court,
D. Colorado.

May 2, 2000.

Robert S. Berger, Denver, CO, for Applicant.

Ken Salazar, Attorney General, Joseph P. Sanchez, Assistant Attorney General, Office of the Attorney General, Denver, CO, for Respondents.

## ORDER ON HABEAS CORPUS PETITION

KANE, Senior District Judge.

This matter is before me on Jeffrey R. Mulberry's Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("the Petition").[1] Mulberry is incarcerated in the Arrowhead Correctional Facility of the Colorado Department of Corrections. The Petition challenges the result of Mulberry's parole "hearing" held on November 15, 1999 in which the Colorado State Board of Parole ("Board") denied his request for parole.[2] Mulberry alleges the Board's decision was arbitrary, capricious, and an abuse of discretion, denying him his constitutional right to liberty. I deny the Petition.

### I. *Jurisdiction.*

There are no state remedies available to Mulberry which would require dismissal under the exhaustion requirement of 28 U.S.C. § 2254(b). *See Schuemann v. Colorado State Bd. of Adult Parole,* 624 F.2d 172, 173 (10th Cir.1980). State parole board procedures and decisions are subject to federal judicial review. *Id.* Thus, the filing of the petition in this court without first seeking review of the Board's decision in state court is permitted. *See Mahn v. Gunter,* 978 F.2d 599, 600 n. 3 (10th Cir.1992).

1. Mulberry, filed the Petition pro se. I granted his motion for appointment of counsel and permitted the parties to file supplemental briefs.

2. Mulberry previously contested the results of the parole "hearing" held on January 19, 1999, alleging the Board's decision to defer

### II. *Standard of Review.*

"[T]he district court reviews the Parole Board's action for abuse of discretion, asking whether the Board's action resulted 'in an abridgement of the petitioner's constitutional rights.'" *Wildermuth v. Furlong,* 147 F.3d 1234, 1236 (10th Cir. 1998) (quoting *Paz v. Warden,* 787 F.2d 469, 473 (10th Cir.1986)).

### III. *Merits.*

Mulberry claims the Board's decision to deny him parole was arbitrary and capricious because (1) it was retaliatory for his challenging the previous denial of parole; (2) it was predetermined, *i.e.,* made before the hearing commenced; (3) Board member Don Alders failed to comply with statutory guidelines mandated by law; (4) Mulberry's parole expectation was created shortly after he began his sentence and was heightened by the approval of his parole plan and the successive administrative review; (5) retroactive application of the change in the Board's reconsideration policy so as no longer to allow for reconsideration of an inmate's parole two months early violates the Ex Post Facto Clause.

### A. *Decision to Deny Parole.*

For defendants serving sentences in Colorado for crimes committed on or after July 1, 1985, the Board has unlimited discretion to grant or deny parole. *Thiret v. Kautzky,* 792 P.2d 801, 805 (Colo.1990). Thus, Mulberry has no constitutional inherent right to be conditionally released before the expiration of a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

his parole was arbitrary, capricious and an abuse of discretion. On April 12, 1999, I denied his application for a writ of habeas corpus. On August 31, 1999, the United States Court of Appeals for the Tenth Circuit denied Mulberry's application for a certificate of appealability for his habeas corpus.

The Colorado parole statute gives the Board broad discretion and does not require the granting of parole upon a showing of any particular facts. *See* Colo.Rev. Stat. § 17–2–201(3)(b) (1978). The parole-release decision depends on an "amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience." *Id.* at 10, 99 S.Ct. 2100. It involves a "discretionary assessment of a multiplicity of imponderables," including but not necessarily limited to the nature of the crime(s) committed, the amount of time served, and the risk to society. *Id.*

In reviewing the Board's decision, the inquiry is only whether there is a rational basis in the record for its conclusions embodied in its statement of reasons. *Lewis v. Beeler*, 949 F.2d 325, 331–32 (10th Cir. 1991). So long as there was sufficient evidence before the Parole Board to support its decision, its actions are not an abuse of discretion. *Wildermuth*, 147 F.3d at 1236–37 (10th Cir.1998) (citing *Solomon v. Elsea*, 676 F.2d 282, 290–91 (7th Cir. 1982)).

By statute, the Board is not allowed to parole any offender unless "there is strong and reasonable probability that the person will not thereafter violate the law." Colo. Rev.Stat. §§ 17–2–201(4)(a), 17–22.5–404(1) (1999). Mulberry is serving sentences for five crimes and, in addition, received prison disciplinary sanctions on seven occasions between January 1994 and March 1998. (Answer App. Writ Habeas Corpus, Aff. Don Alders, Att. 1.) As stated in the notice of the Board's action and in the affidavit of Don Alders, the Board member who conducted the parole review, the Board concluded Mulberry needed to serve more time in prison before he was released among the general population. (*Id.*) I find there was a rational basis in the record for the Board's conclusions embodied in its (albeit cursory) statement of reasons. *See Schuemann*, 624 F.2d at 174 (finding it was evident from the notice form sent to petitioner that the Board was concerned about the short time he had served for a serious offense and this in itself was "a sufficient and proper reason" to deny parole).

There is sufficient evidence in the record, including Alders' affidavit and Mulberry's criminal and prison disciplinary history and prison disciplinary sanctions, to support the conclusion that (1) the Board exercised its discretion and acted affirmatively in denying Mulberry's parole request; and (2) Mulberry needed more time. My inquiry into the merits of the decision to deny parole ends there. Because a rational basis exists, the Board's actions are not an abuse of discretion. *See Wildermuth*, 147 F.3d at 1236. Nor need I reach the propriety of the Board's consideration of the Colorado Actuarial Risk Assessment Scale score which resulted in Mulberry's being rated in the "high medium risk" rather than the "medium risk" category. Even accepting that the Board considered this document in reaching its decision, there was no abuse of discretion because the Board's decision rested on other valid reasons, namely his disciplinary violations and extensive criminal history. *See id.*

Mulberry maintains it is necessary to hold an evidentiary hearing at which Parole Board members involved in the decision testify and explain the basis for the decision. Because I have determined a rational basis exists for the Board's decision, however, a hearing is not necessary.

B. *Due Process*

As stated, there is no federal constitutional right to parole. *Greenholtz*, 442 U.S at 7, 99 S.Ct. 2100. Similarly, there is no provision in the Constitution, any federal statute or legal precedent in this circuit giving inmates a right to have a hearing before the consideration of parole. Nor is there any provision in federal law entitling an inmate to any particular procedure when a state parole board decides to consider a parole application. *Shirley v. Chestnut*, 603 F.2d 805, 806 (10th Cir. 1979).

A state law only creates a federally protected liberty interest if it places substantive limitations on official discretion. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 462, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). This is the case where the state law gives specific directives to the decision maker that if "substantive predicates are present, a particular outcome must follow...." *Id.* Where, however, as in Colorado, a state law gives prison officials discretion to deny an inmate's request "for any constitutionally permissible reason or for no reason at all ... the State has not created a constitutionally protected liberty interest." *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (further quotation omitted); *see also Milligan v. Colorado Department of Corrections*, 751 P.2d 75, 76 (Colo.App.1988) (holding because inmate classification decisions were within the discretion of Department of Corrections officials, defendant's particular classification implicated no liberty interest protected by the Fourteenth Amendment due process clause). In sum, because Colorado's discretionary parole scheme does not create an entitlement to a liberty interest in parole, Mulberry is not entitled to due process protections therein.[3]

### C. *Ex Post Facto Clause.*

The States are prohibited from enacting an ex post facto law. U.S. Const.,

Art. I, § 10, cl. 1. Mulberry claims the Ex Post Facto Clause precludes application of the change in the Board's discretionary reconsideration policy because the policy in effect when he committed his crimes allowed for reconsideration of an inmate's parole two months early. In this regard he cites *Jones v. Garner*, 164 F.3d 589 (11th Cir.1999). The Supreme Court recently reversed that decision in *Garner v. Jones*, —— U.S. ——, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), citing its earlier decision in *California Department of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

In *Morales*, a California statute changed the frequency of reconsideration for parole from every year to up to every three years for prisoners convicted of more than one homicide. *Morales*, 514 U.S. at 503, 115 S.Ct. 1597. The controlling inquiry was whether retroactive application of the change in California law created "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509, 115 S.Ct. 1597. The Court found the amended law did not modify the statutory punishment imposed for particular offenses nor the standards for determining either the initial date for parole eligibility or an inmate's suitability for parole. *Id.* at 507, 115 S.Ct. 1597. Moreover the California Parole Board was vested with the discretion to decrease the frequency with which it reconsidered parole

---

**3.** To the extent the Colorado statute prescribes the procedure to be followed when an inmate applies for parole, it has been satisfied:

> Whenever an inmate initially applies for parole, the board shall conduct an interview with the inmate. At such interview at least one member of the board shall be present. Any final action on an application shall not be required to be made in the presence of the inmate or parolee, and any such action shall require the concurrence of at least two members of the board. When the two members do not concur, a third member shall review the record and, if deemed necessary, interview the applicant and cast the deciding vote. Any subsequent application for parole shall be considered

> by the board in accordance with the provisions of section 17–2–201(4)(a).

Colo.Rev.Stat. § 17–2–201(9)(a)(1) (1999). The law sets no limit on the evidence a Board member may consider. It only requires the Board member to meet, interview the inmate, and consider the application for parole. *See Id.* § 17–2–201(4)(a). Here, the Board members met, considered the application and voted to deny it. They gave their written explanation as to why they did not believe Mulberry to be a fitting candidate. The explanation, though terse is sufficient. *See Schuemann*, 624 F.2d at 174 (holding a notice form sent to petitioner indicating the Board was concerned about the short time he had served for a serious offense a sufficient and proper reason).

for a limited class, consisting of prisoners convicted of more than one homicide. *Id.* The Court found there was no ex post facto violation because the sum of these factors illustrated the decrease in the frequency of parole suitability proceedings "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." *Id.* at 509, 115 S.Ct. 1597.

In *Garner,* the Court examined whether Georgia's amended parole law, which changed the frequency of required reconsideration hearings for inmates serving life sentences from every three years to every eight years, violated the Ex Post Facto Clause. The test was whether the amended rule "creates a significant risk of prolonging respondent's incarceration." *Garner,* —— U.S. at ——, 120 S.Ct. at 1367. The Court took into account the Georgia Parole Board's broad discretion to determine whether an inmate should receive early release and as to how often to set an inmate's date for reconsideration with eight years for the maximum. *Id.* at 1369. The Georgia board's policies also permitted expedited parole reviews where there was a change in the inmate's circumstance or the board received new information warranting earlier review. *Id.* at 1370. The Court held the respondent must show, as applied to his own sentence, the amended law created a significant risk of increasing his punishment. *Id.* It noted the record before the Court of Appeals contained little information bearing on the level of risk created by the changed law and remanded the case for consideration of whether retroactive application of the amendment increased to a significant degree the likelihood of prolonging the respondent's incarceration. *Id.* at 1371.

The Colorado statute governing parole reconsideration pertinently states:

(5) For any offender who is incarcerated for an offense committed prior to July 1, 1993, upon application for parole, the state board of parole, working in conjunction with the department and using the guidelines established pursuant to section 17–22.5–404, shall determine whether or not to grant parole and, if granted, the length of the period of parole. The state board of parole may set the length of the period of parole for any time period up to the date of final discharge as determined in accordance with section 17–22.5–402. **If an application for parole is refused by the state board of parole, the state board of parole shall reconsider within one year thereafter whether such inmate should be granted parole. The state board of parole shall continue such reconsideration each year thereafter until such inmate is granted parole or until such inmate is discharged pursuant to law. . . .**

Colo.Rev.Stat. § 17–22.5–403(5) (1999) (emphasis added).

The Board denied Mulberry's parole application on November 15, 1999. Under the statute, it need not reconsider the application until November 15, 2000. In its discretion, the Board decided if a decision on an inmate's application for parole was deferred for six months or longer, the Board would reconsider two months early. That policy was changed in November, 1999, when the Board decided it would no longer reconsider the application two months early. Taking into consideration the relevant factors and test enunciated in *Morales* and *Garner* to the circumstances of this case, I find the change in discretionary policy has not created a significant risk of increasing Mulberry's punishment.

As in *Morales,* here the change in policy does not affect the length of sentence, the method of calculating the parole eligibility date, or whether the Colorado Parole Board can parole the offender. *See id.,* 115 S.Ct. at 1602–03. The only thing that has changed is that the Board will no longer reconsider the inmate's application two months early. As in *Garner,* the Board retains its broad discretion in determining whether an inmate should receive early release. *See id.,* —— U.S. at ——, 120 S.Ct. at 1369–70. The Colorado

statute merely sets a deadline of one year by which the Board must meet again with regard to the inmate. The Board retains the ability to meet sooner than one year if a change in circumstance persuades it that earlier reconsideration is appropriate.

In *Morales*, the Court found there was no reason to believe the change in frequency of reconsideration for parole from every year to up to a maximum of every three years would extend any prisoner's actual period of confinement. *A fortiori*, especially given the wide discretion retained by the Board, there is no reason to believe the policy postponing the reconsideration of parole for a period of two months would do so.

### IV. *Conclusion.*

For the aforesaid reasons, the Application for a Writ of Habeas Corpus is DENIED.