F I L E D
United States Court of Appeals
Tenth Circuit

NOV 4 2003

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS
TENTH CIRCUIT**

---

LEONARD PELTIER,

       Petitioner-Appellant,

v.

JOSEPH W. BOOKER, JR., Warden,
United States Penitentiary,
Leavenworth, Kansas,

       Respondent-Appellee.

No. 02-3384

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 99-CV-3194-RDR)**

---

Carl S. Nadler, of Heller, Ehrman, White & McAuliffe, LLP, Washington, D.C. and Barry A. Bachrach, of Bowditch & Dewey, LLP, Worcester, Massachusetts (Ramsey Clark and Lawrence W. Schilling, New York, New York, and B. Kay Huff, Lawrence, Kansas, with them on the briefs), appearing for Petitioner-Appellant.

Eric F. Melgren, United States Attorney (Nancy Landis Caplinger, Assistant U.S. Attorney, with him on the brief), Topeka, Kansas, appearing for Respondent-Appellee.

---

Before **SEYMOUR**, Circuit Judge, **ANDERSON** and **BRORBY,** Senior Circuit Judges.

---

**PER CURIAM**.

Leonard Peltier is housed at the United States Penitentiary in Leavenworth, Kansas. He is serving consecutive life sentences for the 1975 murders of two FBI agents. Pursuant to 28 U.S.C. § 2241, he filed a petition for habeas corpus, seeking immediate release on parole. The district court denied relief and we affirm.

# I

## A. The Pine Ridge Murders

The record on appeal and the prior federal court decisions regarding Mr. Peltier reflect the following facts. In 1975, the Pine Ridge Indian Reservation in South Dakota was embroiled in conflict between traditional elders, who sought independence from Bureau of Indian Affairs (BIA) managers, and Native Americans supportive of the BIA power structure. The conflict became violent, and the traditional elders sought protection from members of the American Indian Movement (AIM). Mr. Peltier and other AIM activists arrived at Pine Ridge to defend reservation traditionalists.

On June 26, 1975, FBI agents Jack Coler and Ronald Williams entered the Pine Ridge Reservation with an arrest warrant for four men charged with armed robbery and assault with a deadly weapon. The two officers began following a van carrying several men. The van came to a stop when it neared the Jumping

Bull Compound, and the officers stopped at a distance behind it. A firefight erupted between the agents and the men in the van and expanded to include others. The group firing on the agents was comprised chiefly of AIM activists. Agents Coler and Williams were wounded in the gun battle and then killed by shots taken at point-blank range with a high-velocity, small-caliber firearm. The murder weapon was subsequently determined to be an AR-15 linked to Mr. Peltier.

The government originally indicted four men for the officers' murders. Two were acquitted, charges were dropped against a third, and Mr. Peltier was convicted on two counts of first degree murder in federal district court in North Dakota. In June 1977, that court sentenced Mr. Peltier to two consecutive life terms for these crimes.

### B. Mr. Peltier's Escape from Prison

Two years later, Mr. Peltier escaped from prison. He and his fellow escapees fired shots at prison staff in the course of their breakout. While a fugitive, Mr. Peltier reportedly committed armed robbery. Authorities apprehended Mr. Peltier in Oregon shortly after his escape. He was in possession of a semi-automatic rifle matching spent cartridges at the scene of the escape. Mr. Peltier was convicted in federal district court in California of escape and possession of a firearm and sentenced to a seven-year consecutive term.

### C. Mr. Peltier's Habeas Corpus Petitions

Through the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Mr. Peltier was able to obtain a great deal of information not presented at his trial for the Pine Ridge murders, including a teletype which Mr. Peltier interpreted as relating to a shell casing found in Agent Coler's trunk. Arguing this new evidence undermined the link between his AR-15 and the agents' murders, Mr. Peltier filed motions to vacate the judgment against him for those murders, to disqualify the district court, and for a new trial based on newly discovered evidence pursuant to 28 U.S.C. § 2255. The district court denied these motions. *United States v. Peltier*, 553 F. Supp. 886 (D.N.D. 1982). The Eighth Circuit affirmed in large part, but remanded for an evidentiary hearing to consider "any testimony or documentary evidence relevant to the meaning of the October 2, 1975, teletype and its relation to the ballistics evidence introduced at Peltier's trial." *United States v. Peltier*, 731 F.2d 550, 555 (8th Cir. 1984). The district court was instructed to rule on whether the government withheld that evidence in violation of the *Brady* doctrine. *See Brady v. Maryland*, 373 U.S. 83 (1963).

At the evidentiary hearing, Mr. Peltier contended the October 2nd teletype established that a shell casing found in Agent Coler's trunk–which had been a central part of the government's case at trial–could not have been fired from his weapon. *United States v. Peltier*, 609 F. Supp. 1143, 1145 (D.N.D. 1985). FBI

Special Agent Evan Hodge, author of the teletype at issue, was the only witness at the hearing. Agent Hodge controverted Mr. Peltier's position, insisting the teletype concerned casings other than the one found in the agent's trunk. *Id.* at 1150. The district court found his testimony credible. *Id.* at 1152. The court found the teletype not to be evidence of perjury and to be cumulative of other evidence that was used to cross-examine Agent Hodge at trial. *Id.* at 1153. The court denied relief because,

> in the context of the entire record, [the newly discovered teletype] would not have affected the outcome of the trial, and [did] not create a reasonable doubt that did not otherwise exist, [thus Mr.] Peltier . . . failed to establish constitutional error. The nondisclosure of the teletype did not violate the Brady doctrine.

*Id.* at 1154.

Mr. Peltier appealed the district court's denial. In reviewing his appeal, the Eighth Circuit held that "the prosecution withheld evidence from the defense favorable to [Mr.] Peltier, and that had this evidence been available to the defendant, it would have allowed him to cross-examine certain government witnesses more effectively." *United States v. Peltier*, 800 F.2d 772, 775 (8th Cir. 1986). In order to grant relief, however, the court would have had to determine that the newly discovered evidence made an acquittal reasonably probable. *United States. v. Bagley*, 473 U.S. 667, 682 (1985). It could not reach that conclusion. *Peltier*, 800 F.2d at 777. According to the Eighth Circuit, a "simple

but very important fact[] remain[ed]:  The casing introduced into evidence had in fact been extracted from the Wichita AR-15 [linked to Mr. Peltier].”  *Id.*  While there were several AR-15s on the compound the day of the shootings, and while the evidence linking Mr. Peltier to the AR-15 that killed the officers was circumstantial, the evidence against Mr. Peltier remained strong enough to require denial of relief under the *Bagley* standard.  *Id.* at 778-80.

Mr. Peltier filed a second § 2255 petition in 1991.  In denying relief, the district court ruled that

> (1) the record does not support Peltier’s contention that an alleged concession by government counsel during oral argument before [the Eighth Circuit] in the prior section 2255 appeal resulted in a change in the theory of the government’s case and, therefore, produced a conviction that could not be supported by the evidence introduced at trial and (2) Peltier’s other contentions–primarily that the government engaged in various kinds of misconduct in connection with the investigation and prosecution of the case–were not cognizable in [that] section 2255 proceeding because the contentions either were litigated, or could and should have been litigated, in the direct appeal of Peltier’s conviction or the prior section 2255 proceeding.

*Peltier v. Henman*, 997 F.2d 461, 463 (8th Cir. 1993).  The Eighth Circuit affirmed, agreeing that the government had never conceded it could not prove Mr. Peltier murdered Agents Coler and Williams, that the government had always advanced alternate theories of Mr. Peltier’s guilt, either as the shooter or the shooter’s aider and abettor, and that Mr. Peltier’s other claims were either procedurally barred or meritless.  *Id.* at 465, 472, 473.

-6-

### D. Mr. Peltier's Applications for Parole

Mr. Peltier applied for parole in 1986, but later waived consideration. He reapplied in August 1993. He received a parole hearing on December 14, 1993, at which he was represented by counsel and made a statement. The Parole Commission calculated his parole guidelines at a *minimum* of 188 months due to his convictions for first degree murder, escape, and possession of a firearm; eleven incidents of institutional misconduct; and a reported armed robbery while he was a fugitive. At the time of the hearing, Mr. Peltier had served 204 months. The Commission refused parole and set a fifteen-year reconsideration period due to the nature of the several crimes in which Mr. Peltier had been involved. The Commission recommended referral to the Regional Commissioner, who concurred in its recommendation. That commissioner then referred Mr. Peltier's case to the National Commissioners, who also concurred. Finally, Mr. Peltier appealed to the full Parole Commission which, after correcting a miscalculation and raising his parole guidelines to a *minimum* of 200 months, agreed with the original parole decision.

In 1995, Mr. Peltier received a statutory interim hearing. The hearing officer was persuaded there was insufficient evidence to support a finding that Mr. Peltier personally shot Agents Coler and Williams at point-blank range. Despite that finding, he recommended no change in Mr. Peltier's parole status

because he believed evidence that Mr. Peltier was a co-conspirator or aider and abettor in the agents' executions justified his above-the-guidelines prison time.

A second hearing officer then reviewed Mr. Peltier's case. Based on a legal officer's recommendation, he determined that the first hearing officer had exceeded the scope of a statutory interim review and recommended the initial findings be reinstated. Adopting the legal officer's view, the second hearing officer recommended no change in Mr. Peltier's parole status.

Mr. Peltier appealed this interim determination to the full Parole Commission. While that body recognized the lack of direct evidence indicating Mr. Peltier personally executed Agents Coler and Williams, it pointed to adequate circumstantial evidence of his personal involvement, which met the preponderance of the evidence standard for the Commission's findings. The Commission reasserted its belief that Mr. Peltier was in fact the shooter, but noted it would make the same determination regarding his parole if he were merely an aider and abettor. Release of Mr. Peltier, found the Commission, would be contrary to the public respect for the law contemplated by 18 U.S.C. § 4206(a).[1]

---

[1]   If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history of the characteristics of the prisoner, determines: (1) that release would not

(continued...)

-8-

Mr. Peltier's request for parole was denied and his reconsideration period remained at fifteen years.

In May 1998, Mr. Peltier had his second interim statutory hearing. The Commission found no new information to warrant a change in his status. Specifically, the Commission found Mr. Peltier's medical condition did not warrant release and the seriousness of his crimes and failure to accept responsibility militated against granting parole.

### E. Mr. Peltier's Current Habeas Petition

Mr. Peltier applied to the district court for habeas corpus review of the Parole Commission's actions, arguing (1) its decisions were arbitrary and capricious because it could not determine who shot the agents; (2) the decisions were based on incorrect information and discriminatory factors and thus were unlawful; (3) application of parole rules and regulations revised after his conviction violated *ex post facto* principles; and (4) failure to grant parole in light of his medical condition was arbitrary and capricious and amounted to cruel and

---

[1](...continued)
> depreciate the seriousness of his offense or promote disrespect for the law; and (2) that release would not jeopardize the public welfare; subject to the provisions of . . . this section, and pursuant to guidelines promulgated by the Commission . . . , such prisoner shall be released.

18 U.S.C. § 4206(a).

unusual punishment. The district court denied relief. Mr. Peltier appeals to this court, reasserting only argument (1) above. He contends "[t]he district court erroneously accepted the Commission's denial of parole where the record does not support the Commission's sole basis for extending the date of Peltier's parole well outside normal guidelines–namely, that Peltier participated in an 'ambush' and 'the cold-blooded execution' of two FBI agents." Aplt. Br. at 10.

**II**

"Judicial review of Parole Board decisions is narrow." *Dye v. United States Parole Comm'n*, 558 F.2d 1376, 1378 (10th Cir. 1977). The Commission's decision will stand unless it is arbitrary and capricious. *Id.* "[I]t is not the function of courts to review the Board's discretion in denying parole or to repass on the credibility of reports received by the Board in making its determination." *Id.* A reviewing court must make some inquiry into the factual basis for the Commission's decision. *Misasi v. United States Parole Comm'n*, 835 F.2d 754, 758 (10th Cir. 1987). But "[t]he inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons." *Id.* (quoting *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982)). We assess the Parole

Commission's decision in light of these standards.

The Parole Commission's July 12, 1996, Notice of Action thoroughly lays out the facts relied upon by that body in denying Mr. Peltier's parole and delaying its reconsideration until 2008:

> After careful examination of the evidence in the record, the Commission continues to be persuaded that you were, in fact, the individual who executed the two wounded F.B.I. agents by firing upon them at point-blank range with an AR-15 rifle. Trial witness [and AIM member] Norman Brown testified that he saw you firing an AR-15 rifle after the shooting started at the Jumping Bull Compound. Trial witness [and AIM member] Michael Anderson testified that he saw you at the agents' vehicles with an AR-15 rifle. No witness testified that anyone other than you fired an AR-15 rifle at the agents' cars, or that anyone other than you was seen at the agents' cars with an AR-15. (The evidence concerning other AR-15 rifles fired that day indicates that these rifles were fired later, and at places from which direct aim could not have been taken at the murdered F.B.I. agents.) The agents were killed with high-velocity bullets that no other weapon used against them that day but an AR-15 could have fired. A .223 shell caliber casing found in the trunk of Agent Coler's car had an ejection mark matching a damaged AR-15 rifle subsequently recovered in Wichita, Kansas, from a vehicle driven by your associates. Furthermore, you had a personal motive to murder the two F.B.I. agents, because you had previously failed to appear for a murder trial in Wisconsin and you believed that the two F.B.I. agents were coming to arrest you. Moreover, [AIM member] William Draper testified that he heard you discuss details of the murders the evening after the shooting took place. Further evidence against you is that, after you avoided arrest in Oregon, Agent Coler's service revolver was found in your vehicle inside a paper bag bearing your thumb print . . . . The Commission finds that the two F.B.I. agents, armed only with their service revolvers and driving separate cars, were performing a routine law enforcement function . . . when they were suddenly ambushed and overwhelmed with superior firepower by you and your associates. (There were 125 bullet holes in the agents' cars and their rifles were stored in the car trunks.)

Aplt. App. at 301-02.

All of the facts relied upon by the Commission can be found in previous Eighth Circuit decisions. That court quoted Norman Brown's testimony. *Peltier*, 800 F.2d at 779. It also described the testimony of Michael Anderson and William Draper. *Id.*; *United States v. Peltier*, 585 F.2d 314, 319, 320 (8th Cir. 1978) (direct appeal). The Eighth Circuit outlined facts and testimony suggesting Mr. Peltier's motive to murder the agents. *Peltier,* 585 F.2d at 319-20. The Commission's statement that "[n]o witness testified that anyone other than you fired an AR-15 rifle at the agents' cars, or that anyone other than you was seen at the agents' cars with an AR-15," Aplt. App. at 301, came directly from an Eighth Circuit opinion. *See Peltier*, 800 F.2d at 779. Mr. Peltier previously alleged that FBI intimidation of trial witnesses compromised their reliability. *Peltier*, 585 F.2d at 328-29. The Eighth Circuit recognized the intimidation of AIM activists, but noted each witness's attestation that his trial testimony was truthful. *Id.* The Commission clearly has a rational basis for relying on this testimony to dispose of Mr. Peltier's parole appeal.

The physical evidence cited by the Parole Commission was also catalogued by the Eighth Circuit. That court noted that only the AR-15 linked to Mr. Peltier could have fired the fatal shots into the two agents, that the .223 casing found in Agent Coler's trunk matched the AR-15 recovered in Wichita and linked to Mr.

Peltier, that other AR-15's present on the Reservation were fired at locations far from the murder scene, and that Mr. Peltier was apprehended in possession of Agent Coler's service revolver. *Id.* at 319-20; *Peltier*, 800 F.2d at 779. After the evidentiary hearing on Mr. Peltier's first habeas petition, the district court in North Dakota held that the October 2nd teletype did not cast doubt on the connection between the .223 casing found in Agent Coler's trunk and the AR-15 linked to Mr. Peltier. *Peltier*, 609 F. Supp. at 1152. On appeal, the Eighth Circuit asserted the casing "had in fact been extracted from the . . . AR-15 [linked to Mr. Peltier]." *Peltier*, 800 F.2d at 777. As with the testimony discussed above, the Parole Commission could rationally rely on this evidence in denying Mr. Peltier's request for parole and delaying reconsideration until 2008.

Both in briefing and at oral argument, counsel for Mr. Peltier challenged the accuracy of the Commission's description of events leading up to the agents' deaths. While the Commission's use of the word "ambush" may have been imprecise, the Commission was clearly correct in stating the agents were "overwhelmed." Aplt. App. at 302. As reported by the Eighth Circuit, Agents Coler and Williams were on the Pine Ridge Reservation merely to execute an arrest warrant. *Peltier*, 585 F.2d at 318. The results of the firefight in which they became entangled suggest they were ill-prepared for such an event. When the smoke cleared, 125 bullet holes were found in the agents' cars. *Id.* Only five

casings attributable to the agents' revolvers were ever found at the scene. *Id.*

The Commission's description of the murders in various Notices of Action as "executions" and "cold-blooded" was warranted. Aplt. App. at 199, 281, 301. Evidence from the scene indicated

> Williams attempted to shield his face from the blast with his right hand, turning his head slightly to the right. The murderer placed the barrel of his gun against Williams' hand and fired. The bullet ripped through Williams' hand, into his face, and carried away the back of his head. He was killed instantly. The murderer shot Coler, who was unconscious, across the top of the head. The bullet carried away a part of his forehead at the hairline. The shot was not fatal, however. The murderer then lowered his rifle a few inches and shot Coler through the jaw. The shell exploded inside his head, killing him instantly.

*Peltier*, 585 F.2d at 318-19. The Commission's characterization of these events appears accurate to this court.

The facts relied upon, of course, must support the Commission's conclusions. The Commission's Notice of Action reasoned that:

> [a]lthough the above evidence is consistent with your having, while at the scene of the murders, aided and abetted the use of the above-mentioned AR-15 rifle by another individual to execute the agents, the Commission is persuaded that the greater probability is that you yourself fired the fatal shots. . . . It would be unjust to treat the slaying of these F.B.I. agents, while they lay wounded and helpless, as if your actions had been part of a gun battle. Neither the state of relations between Native American militants and law enforcement at the Pine Ridge Indian Reservation prior to June 16, 1975, nor the exchanges of gunfire between individuals at the Jumping Bull Compound and the law enforcement agents who arrived there during the hours after Agents Coler and Williams were murdered, explains or mitigates the crimes you committed. . . . Your release on parole

-14-

would promote disrespect for the law in contravention of 18 U.S.C. § 4206(a).

Aplt. App. at 301-02. Previous federal court decisions provided the Commission with ample facts to support its conviction that Mr. Peltier personally shot Agents Coler and Williams. We cannot hold that the Commission's reliance on these decisions, nor its determination that the aggravating circumstances of this crime outweigh mitigating evidence presented by Mr. Peltier, constitute arbitrary and capricious action on the Commission's part.

In attacking the rational basis for the Parole Commission's decision, Mr. Peltier first posits "[n]either Peltier's convictions nor the Eighth Circuit post-conviction decisions [support] the Commission's finding that Peltier participated in an 'ambush' and executed the agents after they were incapacitated." Aplt. Br. at 11. But a jury convicted Mr. Peltier of premeditated first degree murder. *Peltier*, 997 F.2d at 463; *Peltier*, 800 F.2d at 772. Contrary to Mr. Peltier's assertion that evidence undergirding his conviction has begun to "evaporate," Aplt. Br. at 15, the evidence supporting the jury's verdict appears in numerous Eighth Circuit opinions. Neither the conviction nor any of the subsequent court decisions have been overturned. The Commission may justifiably rely on the conviction and the Eight Circuit's refusal to overturn it in making its parole determinations. *See Fiumara v. O'Brien*, 889 F.2d 254, 257-58 (10th Cir. 1990) (in making parole determinations, Commission may consider formally adjudicated

-15-

crimes, as well as information from prosecutors and other parties).

Mr. Peltier correctly asserts his "convictions do not necessarily rest on the theory that he executed the FBI agents" and that the government has conceded as much. Aplt. Br. at 12, 13. As the Eighth Circuit recognized, "[t]he government tried the case on alternative theories: it asserted that Peltier personally killed the agents at point blank range, but that if he had not done so, then he was equally guilty of their murder as an aider and abettor." *Peltier*, 997 F.2d at 465. It is possible the jury accepted only the aiding and abetting theory to convict Mr. Peltier of premeditated first degree murder. Were that the case, the Commission, based on the evidence before it, could still reach the conclusion it did.

Thus, in *Lewis v. Beeler*, 949 F.2d 325, 328 (10th Cir. 1991), this court upheld a denial of parole based on the Commission's conclusion that a man serving time for extortion was actually the Tylenol murderer. In condoning the Commission's reliance on evidence that he committed murder, we stated "while we might not have concluded that Lewis was the Tylenol murderer based on this evidence, it provides a rational basis for the Commission's finding to that effect." *Id.* at 332. If the Commission may rely on uncharged crimes in denying parole, it can certainly rely on the body of evidence here suggesting Mr. Peltier in fact executed the agents. That the government argued in the alternative and the jury possibly accepted that Mr. Peltier only aided and abetted the murderer does not

upset the rational basis for the Commission's decision.

Mr. Peltier also calls our attention to the report of the interim hearing officer stating "that a preponderance finding that Peltier actually executed the agents cannot be made." Aplt. App. at 233. However, Mr. Peltier fails to point out a significant feature of this officer's report. Despite his finding insufficient evidence that Mr. Peltier pulled the trigger, *the officer recommended no change in the Commission's denial of parole and fifteen-year reconsideration period.* It would exceed our authority under the arbitrary and capricious review standard to rely on this officer's opinion, which recommended *no change* in Mr. Peltier's status and which was ultimately rejected by the full Commission, to reverse the Commission's parole determination.

In attacking the evidence relied on by the Commission in denying parole and setting the lengthy reconsideration period, Mr. Peltier seems to suggest we should reweigh this evidence in rendering our decision. We cannot. *Fiumara*, 889 F.2d at 257. We can, however, inquire into whether the Commission was rational in considering it. *Misasi*, 835 F.2d at 758.

As noted above, the Commission's description of the firefight as an "ambush" was imprecise: there is no indication any of the participants were lying in wait for the agents. But the officers were on a routine law enforcement mission when they encountered overwhelming firepower from Native American

-17-

activists. And the Commission's choice of the word "execution" in describing the murders was quite apt. While Mr. Peltier asserts "[t]he Commission identified no plausible evidence that [he] shot the agents after they were incapacitated," Aplt. Br. at 17, this statement is simply not true. The evidence linking Mr. Peltier to these crimes is enumerated above. The most damning evidence–the .223 casing found in Agent Coler's trunk–may be more equivocal after the surfacing of the October 2nd teletype, but it has not been "ruled out," as Mr. Peltier contends. Aplt. Br. at 20. There is no direct evidence that Mr. Peltier shot the agents because no one testified they saw him pull the trigger. But as we stated above and restate here, the body of circumstantial evidence underlying the Commission's decision is sufficient for the purposes of rational basis review.

Much of the government's behavior at the Pine Ridge Reservation and in its prosecution of Mr. Peltier is to be condemned. The government withheld evidence. It intimidated witnesses. These facts are not disputed. Mr. Peltier asserts that "the blatant government misconduct is a mitigating factor which should bear strongly on whether [he] should be immediately considered for parole . . . ." Aplt. Rep. Br. at 2. He may be correct. But whether the Parole Commission gave proper weight to this mitigating evidence is not a question we have authority to review. Our only inquiry is whether the Commission was rational in concluding Mr. Peltier participated in the execution of two federal

agents.  On the record before us, we cannot say this determination was arbitrary and capricious.

## III

Because we hold the Commission's principal finding–that Mr. Peltier shot and killed Agents Coler and Williams–was rational, we need not address the Commission's implication that the same disposition is supportable if Mr. Peltier only aided and abetted at the murder scene.  As such, we **AFFIRM** the district court's denial of relief.